## SUFFOLK COUNTY.

### EDWARD DORGAN *vs.* CITY OF BOSTON.

The legislature have power to pass an act authorizing the mayor and aldermen of a city to take land for the widening and laying out of a street, and assess the cost of widening and grading the same, including damages for land and buildings taken therefor, upon the estates which will abut on the street after it shall have been laid out and widened, in proportion to their value at that time; giving to each owner of land so taken, if aggrieved by the doings of the mayor and aldermen, the right of trial by jury.

In ascertaining the compensation to be paid to an owner of land so taken, the legislature may provide that the mayor and aldermen shall estimate the damages sustained, " including the value of the whole of the buildings on the land, and part of which shall be so taken, deducting therefrom, however, the value of the materials and of the buildings, if any, which will remain;" that the land shall be estimated at its value before the widening, and that such estimate shall not include the increased value occasioned merely by the widening, laying out and grading of the street.

The legislature may also provide, in such case, that the owner of any estate, a part of which shall be so taken, may, instead of claiming damages therefor, surrender his whole estate to the city, and that the mayor and aldermen shall thereupon estimate the value of the whole of the same, with the buildings, and the owner shall convey the same to the city, and the city shall pay to him the value so estimated.

BILL IN EQUITY setting forth that the plaintiff is the owner of an estate situated on the corner of Belmont and Purchase

---

Streets, in Boston, with valuable buildings thereon; that the city of Boston, by its mayor and aldermen, have ordered Belmont Street to be laid out and widened to a width of not less than fifty feet, and so graded that the rise or fall shall in no place exceed two and one half feet in one hundred; that for these purposes they have further ordered that a portion of the plaintiff's estate shall be taken and graded, containing in all about fourteen hundred and fifty-seven feet; that they have also ordered and resolved that said mayor and aldermen shall estimate the damages sustained by the plaintiff, including the value of the whole of the buildings, part of which are so taken, deducting therefrom the value of the materials to be removed and of the buildings which will remain standing, and that in estimating the value of the land cut off the same shall be estimated at its value before the widening, and such estimate shall not include the increased value occasioned merely by the widening, laying out and grading of the street, and that said mayor and aldermen shall assess the whole expense of the widening, including the damages for land taken and the net expense of grading the whole widened street upon the estates abutting upon said street, in proportion to their value, as they shall be appraised by said mayor and aldermen when the widening and grading shall have been made.

The bill further set forth that the portion of the petitioner's estate remaining would be almost valueless to him; that nevertheless the defendants were proceeding to assess a large sum upon him, claiming that they were authorized to do so by *St.* 1865, *c.* 159; * that said statute is unconstitutional and void;

---

* The material portions of *St.* 1865, *c.* 159, are as follows:

"Sect. 1. The mayor and aldermen of the city of Boston are hereby authorized to widen and lay out, as a street, the line of street extending from Milk Street to Broad Street, in the said city, nearly parallel with Pearl Street, and now known by the names of Oliver Street, Washington Square and Belmont Street; to take sufficient land for the same, to grade the same, and to assess the cost of such widening and grading, including damages for land and buildings taken for such widening, upon estates abutting upon said widened street, as hereinafter provided."

"Sect 2. The said street shall be made not less than fifty feet wide, and shall

that the mayor and aldermen in assessing the damages for taking the plaintiff's estate proceeded according to the provisions of the above statute; and that their assessment is void. The prayer was for an injunction, and for other relief.

The answer admitted the plaintiff's title, and the taking of the portion of his estate alleged in the bill for the purposes and in the manner set forth, and alleged that the mayor and aldermen had duly awarded damages to him therefor, in the sum of

be so graded that the rise or fall shall in no place exceed two feet and a half in one hundred feet of length.

"Sect. 3. In making the estimate of the cost aforesaid, for which the assessment herewith provided is to be laid, the mayor and aldermen shall estimate the damages sustained by any person or persons by the taking of land for the said widening, including the value of the whole of the buildings on the land, and part of which shall be so taken, deducting therefrom, however, the value of the materials to be removed, and of the buildings, if any, which will remain standing; but no person shall be entitled to claim further damages for the cutting off of such buildings, or injury to the same; and, in estimating the value of the land cut off by the said widening, the land so cut off shall be estimated at its value before the widening, and such estimate shall not include the increased value occasioned merely by the widening, laying out and grading of the said street."

"Sect. 6. The whole expense of the said widening, including the damages mentioned in the third section of this act, and the net expense of grading the whole widened street, after deducting the estimated net proceeds of the earth and gravel removed, shall be assessed upon all the estates abutting upon the said widened street, in proportion to their value, as they shall be appraised by the mayor and aldermen, when the improvements have been made."

Sect. 8 provided that any party aggrieved by the doings of the mayor and aldermen under this act might petition for a jury.

"Sect. 10. Any person owning any of the said estates abutting on the said line of streets mentioned in the first section, at any time before the estimation of the damages, according to the third section of this act, may, instead of the provisions in section third, elect to surrender all of the said estate to the city of Boston. The mayor and aldermen of the said city shall thereupon estimate the value of the whole of the said abutting estate, with the buildings thereon, and the said owner shall convey the same to the said city, and the said city shall pay him therefor the value so estimated." There were further provisions that the portion not used might be sold, and the sum paid by the city should be assessed on the abutters.

$6304.88, and ordered that the cost of the laying out and grad-
ing of the street be hereafter assessed according to the provisions
of *St.* 1865, *c.* 159 ; and further set forth that the plaintiff's
estate would be greatly benefited by the proposed change, and
that the statute referred to is constitutional, and all the proceed-
ings of the mayor and aldermen were authorized thereby.

The plaintiff filed a general replication, and the case was re-
served, by *Chapman,* J., on the bill, answer and replication, for
the determination of the whole court, with leave for either party,
after the decision upon the constitutionality of *St.* 1865, *c.* 159,
to move for a further hearing upon such matters as the court
should think proper.

*I. F. Redfield & J. G. Abbott,* (*W. A. Herrick* with them,) for
the plaintiff. This is an act for making a single street in Bos-
ton. It is more in the form of a decree or judgment than of an
act of legislation. It is almost identical with an order of the
mayor and aldermen for extending and widening a street. The
agency of the mayor and aldermen is only that of commission-
ers. In justice, the parties affected should have been cited and
heard. An act of special legislation like the present is not enti-
tled to the same presumptions in its favor as if the act were gen-
eral. Such acts are passed notoriously as experiments upon the
courts, like doubtful bills indorsed without recourse.

This statute takes private property without providing reason-
able compensation. The compensation provided is in money
and special improvements. See *Meacham* v. *Fitchburg Rail-
road,* 4 Cush. 291; *Davis* v. *Charles River Railroad,* 11 Cush.
506; *Upton* v. *South Reading Railroad,* 8 Cush. 600; 2 Kent
Com. (6th ed.) 339, 340; cases collected in Redfield on Railw.
§ 71. The owners of land taken are excluded from all benefit
of the proposed work. There is no provision for giving com-
pensation for the severance of land ; and the owner of buildings
is compelled to take a portion of his damages in the materials
that are left, at the appraisement of men.

But the chief objection to this statute lies in the fact that it
provides for a mode of taxation which is prohibited by the con
stitution of this commonwealth. The mode here provided is

not proportional or reasonable.  Const. of Mass. pt. 2, c. 1, art. 4. This is a taking of private property for public purposes; and the compensation for the same is to be paid, not by the public, but by taking it from other private persons.  In the present case, the compensation due to the plaintiff must be paid by himself and a very few others.  He gets no compensation except by having it assessed back upon himself and a few who are situated like him.  Indeed, if the street is made of the same width and the lots are equal, each owner must contribute gratuitously the land which is taken from him.  So if one man owns the whole land on one side of the street, he must pay the whole. But the general principle applicable to cases where land is taken by the right of eminent domain is, that the public becomes the debtor.  All the cases go upon the ground that the general benefit compensates for the taxation.  When taxation is required to be proportional, some definite idea of proportion must be intended.  But this proportion is clearly not limited to any limited number of persons.  That would be absurd.  It would under that construction afford no protection as to taxation.  It would allow the legislature to assess any such taxes as they might deem reasonable.  This proportion, therefore, must extend to whole districts.  It obviously referred to the municipal divisions of the state, at the very least; probably to the Commonwealth. The very least which will give a satisfactory meaning to the provision is, to extend it to all taxes for a common purpose. This would require that state, county and municipal taxes, for a common object, should be uniformly levied throughout the district where they operate.

It is said that this will benefit an extensive district.  But this is one of the objections to it.  It is like laying a road across one man's farm for the benefit of another.  The public good did not require this improvement enough to sanction its being carried out; and the persons to be benefited are not assessed. This is a mere fragment of a betterment law.  It is like providing that those who live on a street should pave their own sidewalks.

The provision allowing a surrender of that portion of the

estate which is not taken seems to be fatal. It authorizes the city to take land not wanted for the public use. It makes the city real estate brokers; and imposes on the abutters the risk of loss in transactions in real estate.

The cases in other states, sustaining betterment laws, where there are no constitutional provisions like those in Massachusetts, are not authorities bearing upon the present question. They are usually put on the express ground that there is nothing in the constitution restricting the power of the legislature over taxation. See *People* v. *Brooklyn*, 6 Barb. 209, reversed on appeal in 4 Comst. 419; *Hill* v. *Higdon*, 5 Ohio State R. 243. .

*J. P. Healy & C. M. Ellis*, for the defendants. The provisions in question do not infringe on the constitution. Statutes are presumed to be constitutional. *Commonwealth* v. *People's Five Cents Savings Bank*, 5 Allen, 428. This statute falls within the power to make " all manner of wholesome and reasonable laws." Const. of Mass. pt. 2, c. 1, § 1, art. 4. *Hingham & Quincy Bridge Co.* v. *County of Norfolk*, 6 Allen, 353, and cases cited. The provision in the constitution authorizing proportional and reasonable taxes applies only to general taxation. See *Burnett* v. *Sacramento*, 12 California, 76; *Egyptian Levee Co.* v. *Hardin*, 27 Missouri, 495; *State* v. *New Orleans Navigation Co.* 11 Martin, (La.) 309. The constitution does not use these terms to fix and define an arbitrary, absolute standard, but only declares certain general principles by which the action of the legislature is to be regulated. *Lowell* v. *Oliver*, 8 Allen, 247. *In the Matter of Dorrance Street*, 4 R. I. 255. *Anderson* v. *Kerns Draining Co.* 14 Indiana, 199. In various states, under constitutions asserting substantially the same general principles for legislative action, betterment acts have been upheld. See cases above cited, and *Webster* v. *Alton & New Durham*, 9 Fost. (N. H.) 369; *Nichols* v. *Bridgeport*, 23 Conn. 189; *Brewster* v. *Syracuse*, 19 N. Y. 116; *State* v. *Mayor, &c. of Jersey City*, 4 Zabr. (N. J.) 662; *Shealey* v. *Allegheny*, 25 Penn. State R. 128; *Methodist Church* v. *Mayor, &c. of Baltimore*, 6 Gill, (Md.) 391; *Case of the County Levy*, 5 Call, (Va.) 139; *Lockhart* v. *Harrington*, 1 Hawks, (N. C.) 408; *Winn* v. *City Council of Macon*, 21 Georgia,

275; *Stein* v. *Mayor, &c. of Mobile,* 24 Alab. 591; *Williams* v. *Cammack,* 27 Mississippi, 219; *Wallace* v. *Shelton,* 14 Louis. Ann. R. 498; *Maloy* v. *Marietta,* 11 Ohio State R. (N. S.) 636; *Woodbridge* v. *Detroit,* 8 Mich. 274; *Shaw* v. *Dennis,* 5 Gilm. (Ill.) 405; *Lexington* v. *McQuillan,* 9 Dana, (Ky.) 513; *Nichol* v. *Mayor, &c. of Nashville,* 9 Humph. (Tenn.) 252; *Soens* v. *Racine,* 10 Wisconsin, 271. In all the states referred to, in sparse settlements as well as in dense populations, the charges of ways, bridges and ferries, beneficial to particular localities; of sidewalks, grading and sewerage; of drainage, fencing, ways, dikes, breakwaters and levees; of laying out, widening, grading and improving streets; of ornamenting squares; and of other public works for convenience and comfort have been assessed on particular estates. The principle of betterment acts has been recognized by this court. *Hingham & Quincy Turnpike* v. *County of Norfolk,* 6 Allen, 353, and cases cited. *White* v. *County Commissioners,* 2 Cush. 361, and cases cited. *Boston* v. *Shaw,* 1 Met. 130. It has been constantly acted on by the legislature. Anc. Chart. 55, 390, 403, 507, 552, 623. 4 Mass. Col. Rec. (pt. 1,) 327. *St.* 1781, *c.* 14. Gen. Sts. *c.* 148, §§ 4, 6, 22; *c.* 67, §§ 3, 30, 33; *c.* 26, §§ 5–10. This legislation may also be vindicated on the ground of the need of abating a nuisance.

The legislature, having the power to make laws for such assessments, may determine when and how to make them; and the courts will not assume to revise their determination. See *Lowell* v. *Oliver,* 8 Allen, 247, and other cases cited. This act levies the assessment as fairly and equally as possible. The cases cited and referred to show various forms of assessments which have been recognized as just.

BIGELOW, C. J. In the consideration of the important questions raised in this case, it is necessary to have a clear understanding of the general scope and purpose of the act of the legislature under which the defendants have proceeded in taking the land of the plaintiff and ordering his buildings thereon standing to be removed, as alleged in the bill. Although the act itself does not in terms declare that it was passed in the exercise of powers granted to the legislature by any particular clause of the

constitution, it is quite apparent from its leading provisions that it was the intention of the framers of the statute to authorize the taking of private property for a use deemed to be of a public nature, and that this use was either the establishment of a way or street required by common convenience and necessity, or the improvement of a certain portion of the territory of the city of Boston rendered necessary for police or sanitary purposes. Perhaps both of these objects were intended to be accomplished by means of the authority delegated to the defendants under the statute in question. That either or both of these purposes are in their nature for the public benefit and advantage, so far at least as to justify the appropriation of private property to carry them into effect, is not seriously contested on the part of the plaintiff. Certainly the legislature have so adjudged, because it is on this ground only that they could constitutionally authorize private property to be taken from the owner. Inasmuch as there is nothing to show that this adjudication was not rightfully and properly made, we are bound to presume that an exigency had arisen which in the opinion of the legislature rendered it competent for them to exercise the right of eminent domain, and to delegate to the defendants an authority to appropriate the private property of individuals in order to execute the work contemplated by the statute. The intent of the legislature to exercise their sovereign right of appropriating private property is clearly indicated. All the characteristics of such an act of appropriation, as judicially recognized, are to be found in the provisions of the act. Not only is an express authority given to take private property, but a mode of awarding compensation for such appropriation is provided, which shows that the right of individual owners of property was duly recognized, and that it was the intent of the legislature to exercise their authority to take it for a public use in subordination to the constitutional provision which requires that adequate compensation shall be made therefor.

Taking this view of the purpose of the act, and of the intent of the legislature in enacting it, we come to the specific objections to its validity which are urged by the learned counsel for

. the plaintiff.   The first is, that the provisions of the act regulating the assessment of damages for property taken are such that the owner cannot obtain a reasonable and sufficient compensation for such portions of his estate as may be appropriated for the construction of the contemplated street.   The main ground on which this objection is put is, that the plaintiff is not allowed to recover the full value of his land, because the statute requires that, in ascertaining the value of land taken, it " shall be estimated at its value before the widening, and such estimate shall not include the increased value occasioned merely by the widening, laying out and grading" of the proposed street.   It is obvious that this provision necessarily implies that the owner is entitled to damages for his land at its actual value before it was enhanced by the proposed appropriation of it to a public use ; in other words, he is to be compensated for the land taken by estimating it at the value which it would have had if he had continued to hold it in the same condition and relative situation in which it would remain if the contemplated improvement should not be carried into effect.   We are unable to perceive that this rule of damages will work any injustice to the land owner.   It provides for compensation to him for the value of the property as possessed and enjoyed by him at the time when the statute was enacted which appropriated it to the public use. Nor can we see any good reasons for including in the valuation an element not incident or appertaining to the property itself in the hands of the owner, but which it acquires only by the act which takes it from him and appropriates it to the public. Strictly speaking, the land taken is intrinsically worth to the owner only so much as its valuation would be as part of the entire tract or lot, irrespective of its proposed severance for the public use.   It is difficult to understand how land is increased in value to the owner by a public improvement, which can be effected only by depriving him of its use.   Certainly there is no principle of equity on which a party can rest a claim for damages for the loss of a benefit or profit which, from the very ature of the case, he never could have received or enjoyed.

It is further urged as an objection to the validity of the statute,

on the ground that it fails to provide an adequate compensa-
tion for property taken for a public use, that although provision
is made for the estimation of damages which may be occasioned
to land and buildings by the construction of the proposed street,
the owner is virtually deprived of a portion of his just recom-
pense by reason of the provision contained in § 6, by which
the whole expense of the work, including the sum awarded as
damages for the land taken, is to be assessed upon and paid by
the owners in proportion to the value of the land belonging to
each, which will abut on said street, after it shall have been
completed.  It is insisted that the effect of this provision is to
take from the owner a part of the damages which have been
awarded to him, because he is compelled to pay a portion of
them back in the form of taxes, and that thus he is deprived of
full compensation for his property that has been appropriated to
the use of the public.

In considering this objection, it is to be borne in mind that it
is not founded on any alleged illegality or inequality in the
mode of assessment prescribed by the statute, nor upon any de-
nial of the right of the legislature to lay a tax on a certain sec-
tion or district of a city or town for the purpose of carrying into
effect some local improvement of a public nature.  These are
distinct objections arising in other aspects of the case, which
will be considered hereafter.  The point on which the present
objection turns is, that the mode of assessment prescribed by
the statute operates to take from the owner a portion of his
property without due compensation.  If this objection is entitled
to any weight, it is because the principle of the assessment is
erroneous.  The error, if any, consists in rendering an owner of
property, a portion of whose land has been taken for a public
improvement, liable to assessment for any of that part of the
expense thereof which has been incurred for the payment of
damages to him as compensation for the appropriation of his
property.  But it seems to us that this proposition cannot be
maintained without confounding rights and obligations which
are entirely distinct and independent of each other.

The right of a party to receive a reasonable compensation for

property appropriated to a public use has no relation to or con‑ nection with the obligation or duty which rests upon him to bear his part or proportion of public charges. We know of no principle on which a person can be exempted from assessment for the full amount of his share of a legal tax, because a portion of the money to be raised by taxation is to be used in payment of a claim which he may have against the town or district which is authorized to levy the tax. Nor can it be truly said that the payment of a tax in such case operates to diminish the claim for indemnity to which a party may be entitled. His liability to taxation is distinct from and independent of his right to com‑ pensation. He does not lose any part of his indemnity for property taken from him, because as a citizen he is liable to the payment of a sum of money lawfully assessed upon him. It often happens that a person may be called on to pay, in the form of taxes, a part of the money which is due to him for compen‑ sation for property taken from him and appropriated to a public use. A citizen of a town, for example, may be assessed for his share or proportion of the expense of laying out a way within the limits of the town, including damages for taking his own land. If, as is sometimes the case, he should happen to be the owner of extensive and valuable tracts of land, or a large amount of other property liable to assessment in the town, his proportion of the whole cost of the way included in the tax on his estate might form no inconsiderable proportion of the amount to which he was entitled as compensation for his property taken for the public use. Indeed, if the sum awarded to him was small, the amount of his share of the tax might exceed his claims for dam‑ ages. But it could not be contended that for this reason he was not legally assessed therefor, or that by reason of such assess‑ ment his claim to a reasonable compensation was in any degree abridged or impaired. We can see no distinction in principle between such a case and that of the plaintiff under the provis‑ ions of the statute in question, so far as they affect his right to receive an indemnity for the land taken and appropriated to the construction of the contemplated street.

Some other objections to the rule prescribed by the statute

for the assessment of damages are insisted on in behalf of the plaintiff, which may be briefly disposed of. One is, that the compensation is required to be diminished, not only by the special benefit which may accrue to the owner by the increase in the value of the residue of the lot after the portion required for the street is cut off, but also by the general benefit to the plaintiff's property which he shares in common with other proprietors in the vicinity whose land is not taken. The answer to this is, that no such deduction from the amount of damages is prescribed by the statute. For aught that we can see, the damages for taking land are to be assessed in conformity to the well established rule as recognized in *Meacham* v. *Fitchburg Railroad*, 4 Cush. 291. No deductions are required to be made from the value of the land taken other than those allowed by that rule. Nor are we able to see any force in the objection that from the value of the whole of the buildings or the land, part of which may be taken, is to be deducted the value of the materials to be removed and of the buildings, if any, which may remain standing. This secures to the owner a full indemnity. So much of the buildings as remain, and all of the materials of the portion which is taken down, are not taken for public use. They still continue the property of the owner. It is a perversion of the real intent and meaning of this provision of the statute to say that it compels a party to receive his compensation otherwise than in money. It only declares the equitable rule of damages, that the party shall be paid only for that which is actually taken from him, and not for that which he still retains to his own use.

In regard to other minor objections to the provisions for compensation to owners of property, taken under the statute, which have been suggested in behalf of the plaintiff, it is sufficient to say that they seem to us unimportant and wholly insufficient to invalidate the proceedings or to entitle the plaintiff to equitable relief.

It remains for us to consider that branch of the plaintiff's case which involves an inquiry into the validity of the assessment or mode of taxation prescribed by the statute, by means of which the expenses of the proposed improvement are to be defrayed

The broad position assumed by the plaintiff is, that this is a palpable violation of that provision of the constitution, part 2, *c.* 1, § 1, art. 4, by which the power is given to the legislature to impose only proportional and reasonable taxes. We have already had occasion to consider the force and effect of these words, in connection with other portions of the same article in the constitution, as applied to the imposition of taxes for the public charges of government. As to this class of taxation, the intent seems to be clear to put a restraint on the legislative authority, and to require that taxes levied for general purposes shall be laid on property, so that, taking all estates, real and personal, within the Commonwealth, as one of the elements of proportion, each person subject to taxation shall be obliged to pay only such portion of the taxes as the property owned by him bears to the whole sum to be raised. But this conclusion as to taxation for general purposes is drawn mainly from the clause in the constitution which provides that, in order that assessments for such purposes may be made with equality, a valuation of estates shall be taken anew as often, at least, as once in ten years. This requirement seems to indicate very clearly that such taxation, in order to be proportional, shall be laid according to the property owned by each person liable to assessment within the Commonwealth. But this provision is in terms limited to the public charges of government; that is, to expenditures incurred for those objects of a public nature for which it is the duty of the government to provide, and the burden of which properly rests and is to be distributed among the whole people of the Commonwealth; such, for example, as the charges for carrying on the several departments of the government, for the support of a system of general education, and for the common protection and defence of the people and government of the state. These and other like expenditures, whether incurred by the immediate agents and officers of the state, or through the instrumentality of counties or towns, are to be defrayed by assessments laid with equality and in proportion to the property held by each person liable to taxation.

But there is another large class of expenditures for objects of

a public nature for which it is the proper province of the government to provide, which cannot be deemed to come within the designation of public charges of government, or be held to be a proper subject of general assessment on the whole people of the Commonwealth. Take the case of money expended in effecting an improvement of a local character, which, although it may enure, to a certain extent, to the benefit of the public, is nevertheless especially necessary for and beneficial to private property in the immediate vicinity. It certainly would not be equitable or just, or tend to an equalization of public burdens, that the cost of such a work should be laid on the whole people, or upon those lying remote from the locality, having no property connected with the improvement, and who could derive but little or no benefit or advantage from its construction. The duty of the government to make provision to carry into effect works of such character is clear and unquestionable. Indeed, it is often indispensable for police or sanitary purposes, or the convenience and accommodation of persons living within a certain town or municipality, or a district or section thereof, that money should be expended for purposes of a public nature, but essentially local in their operation and effect. Nor can there be any doubt that ample power to procure the accomplishment of such objects is vested in the legislature, in the exercise of their authority to pass all manner of wholesome and reasonable laws for the good and welfare of the Commonwealth and the subjects thereof. This great and essential attribute of sovereignty would be greatly abridged, if it should be held that the legislature are restricted in their authority to provide means by the levying of taxes for those objects only which would form a proper subject of a general charge on the whole people of the Commonwealth, and have no power to authorize assessments for objects of a local character, the execution of which is required by the convenience and necessities of a town or district or neighborhood. We see no reason for construing the provision in the constitution giving to the legislature the power of imposing proportiona. and reasonable assessments, rates and taxes, as an inhibition on the levy of a tax for local purposes of a public nature upon

those who will reap the benefit on their estates of a proposed expenditure of money. Such is not the natural or reasonable interpretation of the clause, standing as it does in relation to this class or species of taxation, without other words to qualify or restrict its meaning. As has been already said, it is in regard to the public charges of government that the mode of raising money by the imposition of taxes is specially pointed out, and it is as to these only that a restriction is found on the meaning of the preceding clause, by which the power to levy proportional and reasonable taxes is given. As to all other assessments which may be required by the enactment and execution of wholesome and reasonable laws, no limitation of authority is expressed, and none can be implied except that which arises from the natural and proper import of the words used. It certainly cannot be said that all taxes laid for local purposes of a public nature on those who would be chiefly and directly benefited by the execution of a proposed work, and in proportion to the degree of benefit or profit which each will receive therefrom, are necessarily either unreasonable or unproportional. Nor can it be contended that the constitution, in regard to this species of taxation, furnishes any fixed rules of proportion, or gives any absolute standard by which to determine whether a particular tax is within the limits of the legitimate exercise of the power granted. Undoubtedly a very wide discretion was intended to be left to the legislature as to the subjects and method of executing the authority conferred on them of imposing taxes for purposes other than those of a general nature; and yet the power is not wholly without limit. In requiring that taxes should be proportional and reasonable, the framers of the constitution intended to erect a barrier against an arbitrary, unjust, unequal or oppressive exercise of the power. *Oliver* v. *Washington Mills*, 11 Allen, 268. If, for instance, the legislature should arbitrarily designate a certain class of persons on whom to impose a tax, either for general purposes or for a local object of a public nature, without any reference to any rule of proportion whatever, having no regard to the share of public charges which each ought to pay relatively to that borne by all

others, or to any supposed peculiar benefit or profit which would accrue to those made subject to the tax which would not enure to others, so that in effect the burden would fall on those who had been selected only for the reason that they might be made subject to the tax, we cannot doubt that the imposition of it would be an unlawful exercise of power not warranted by the constitution, against the exercise of which a person aggrieved might sue for protection. But no such case is made by the present bill. This part of the plaintiff's case rests on the broad proposition that the legislature have no power to authorize the assessment of the cost of a work of a public nature, but the construction of which will be of special and peculiar benefit to adjacent property, on the abutting estates in proportion to their value. For the reasons already given, we are of opinion that such a tax is neither unreasonable nor unproportional, and that it was competent for the legislature to impose it in the mode prescribed by the statute.

We are greatly strengthened in this conclusion by the consideration that such a mode of assessment of taxes for similar objects has been adopted and carried into effect without doubt or question in this commonwealth, both under the colonial government and since the adoption of the constitution. As early as 1658 it was ordered by the general court of the colony that a certain way should be laid out through Roxbury to "Boston Farms," and power was given to impose the cost on "all such of Boston or other towns as shall have benefit of such way." 4 Mass. Col. Rec. pt. 1, 327. The Prov. St. 4 Wm. & Mary, ᵔ. 1, (Mass. Perp. Laws, 1,) which provided for the laying out of streets in the city of Boston, and also for regulating and enlarging narrow and crooked lanes and passages therein, enacted that the damages for land taken for such enlargement and regulation should be assessed by a jury and paid " by the neighborhood or town " " in proportion to the benefit or conveniency any shall have thereby." A similar enactment was contained in Prov. St. 33 Geo. II. c. 3, (Mass. Perp. Laws, 387,) which was an act for rebuilding that part of Boston which had been laid waste by fire. It was thereby provided that a jury should view the streets

.aid out and the several tenements or lots of land abutting there-
on, and should estimate the damages which any person might
sustain by such laying out, and "likewise the benefit or advan-
tage that may accrue to any person or persons thereby," which
damages "shall be made good to the party endamaged either by
such particular person or persons as shall be thereby benefited,
or by the town of Boston, or by both, in such proportion as the
said jury shall find reasonable." By Prov. St. 8 Anne, c. 99, and
Prov. St. 3 Geo. III. c. 293, (Anc. Chart. 389, 651,) persons re-
ceiving any benefit from common sewers, either direct or remote,
were obliged to pay such a proportional part of making and
repairing the same as should be assessed to them by the select-
men of the towns. Similar enactments were made by St. 1796,
c. 47; Rev. Sts. c. 27; St. 1841, c. 115; and Gen. Sts. c. 48.
By Prov. Sts. 12 Anne, c. 110, and 10 Geo. II. c. 194, § 1, (Anc.
Chart. 403, 505,) it was provided that damages caused by the
laying out of particular and private ways necessary for towns
and for the general benefit, should be paid by the towns, other-
wise by such of the inhabitants as should have the benefit of
the way, to be assessed by the justices of the court of sessions.
So by the fifth section of the last named statute it was provided
that certain bridges should be repaired and maintained in whole
or in part by those "who live near and reap the principal advan-
tage" therefrom. By statute passed October 30, 1781, St. 1781,
c. 14, (1 Mass. Special Laws, 21,) entitled "an act for widening
and amending the streets, &c., of Charlestown" in that part
which was laid waste by fire by the British troops, it was en-
acted that the selectmen should call on persons whose estates
were benefited by the proposed improvement to join in the ap-
pointment of appraisers to determine the sum that the owner
of an estate so benefited ought to pay, and the estate of such
owner was made subject to pay the sum awarded against him.
This act is in this particular and in many others of its provisions
very similar to the one under which the defendants have acted
in taking land of the plaintiff; and it is especially noticeable
because it was passed within a year from the time when the
constitution of Massachusetts was adopted, and by a legislature

composed of many persons who had taken part, some of them a leading one, in the formation of that instrument. In a question touching the powers of the government under the constitution, such contemporaneous action of the legislature is entitled to great weight in determining the true construction to be given to a particular clause. The principle of assessing the cost of a local improvement on those whose estates are benefited thereby was also embodied substantially in *St.* 1795, *c.* 62, which made provision for the draining of meadows and swamps, reënacted in Rev. Sts. *c.* 115, and in Gen. Sts. *c.* 148; and likewise in *St.* 1855, *c.* 104, which authorized the construction of roads to low lands, mines and quarries, and the assessment of the cost on all parties according to the benefits received by each. So the numerous statutes passed by the legislature imposing the construction and maintenance of certain bridges on towns in the immediate vicinity, whose inhabitants derive the greatest benefit therefrom, are based on the same principle. Without extending citations further, it is apparent that the statute in question can not be regarded as an innovation. On the contrary, it seems to be entirely in accordance with the established course of legislation from the foundation of the government to the present time.

Although no case has arisen heretofore in this court which presents the precise questions raised in the present case as to the power of the legislature to authorize a tax to be assessed on estates in the mode provided by the statute under consideration, the principle on which the assessment is based has been repeatedly recognized and sanctioned by this court. The result of these decisions, and the conclusion to which our own minds have been brought on this part of the case, may be stated to be, that taxes levied for public purposes of a local character are not unconstitutional, as being unreasonable and unproportional, solely because they are imposed only on a certain town or district, or on persons residing or owning property in a particular locality, and that an assessment made on persons in respect of their ownership of certain property which receives a peculiar benefit from the expenditure of the money raised by a tax, or by

reason of their residence in the vicinity of a proposed public improvement, and the special advantage or convenience which will accrue to them and their property therefrom, will not be held invalid, although it does not operate on all persons and property in the community in the same manner as taxes levied for general purposes. *Norwich* v. *County Commissioners*, 13 Pick. 60. *Goddard, petitioner*, 16 Pick. 504. *Attorney General* v. *Cambridge*, 16 Gray,  . *Morse* v. *Stocker*, 1 Allen, 150, 159. *Hingham & Quincy Turnpike Co.* v. *County of Norfolk*, 6 Allen, 353, 359.

We have thus far considered the objections to the validity of the statute as levying an illegal and unconstitutional assessment on the plaintiff and his property, assuming that his counsel are right in their position that the statute authorizes the defendants to take only a portion of the estate belonging to him, and compels him to submit to an assessment on the residue; in other words, that the tax is levied on his property against his will. But this construction of the statute leaves out of view the important provision contained in § 10. This requires the mayor and aldermen of the city of Boston to take the whole estate of each owner whose land abuts on the proposed new street, making full compensation therefor, with a right on the part of the owner to appeal to a jury for the assessment of damages, if he elects to surrender it to the city, instead of retaining such part as may not be required for the construction of the street, subject to the assessment to which it would be liable under § 6 for the expenses of the proposed improvements. Construing the provisions in connection with the previous sections, it seems to us that the legislature have in substance required the city to take the whole estates abutting on the streets which are to be widened and graded, in case it should be necessary for the completion of the work and the more easy adjustment of the damages. In the event that all the owners of the abutting estates should elect to surrender them, the entire cost of the work would fall upon the city, and if the estates, when sold, after the construction of the new street, should bring less than the whole cost of the work, the deficiency would be a public charge, to be defrayed by

general taxation. It is clear from these provisions, therefore, that the legislature deemed the work to be of such a public nature and so essential to common convenience as to warrant them in authorizing its execution in a certain contingency at the common expense, in the same manner as other streets are laid out and constructed. In this view, the effect of the statute was to condemn all the estates abutting on the streets named, as being subject to sequestration under the right of eminent domain for a public use. Upon the enactment of the statute, each owner held his estate as having been appropriated for such use. But inasmuch as the execution of the proposed work might not render it necessary that the whole of such estate should be taken in order to complete the improvement contemplated by the legislature, the owner was allowed the privilege of retaining such portion on the condition that it should be subject to assessment for such part of the cost of the work as the value of the estate, after the new street was completed, bore to the whole sum expended. The right given to the owner by § 10 to elect whether he would surrender his estate to the city was in effect nothing more than a mode of signifying that he did not wish to exercise the privilege of reclaiming any part of his estate after the completion of the work on the terms prescribed by the statute, but that the whole might be appropriated to the use of the city, and disposed of by the city accordingly. In other words, the legislature have adjudicated that the proposed improvement is necessary for the public service; and they have in substance and effect, by the provisions of the statute construed together, presented to each owner of the property appropriated to the public use the election to join with all peculiarly interested in constructing it, at their own expense to be equitably assessed among them, or to give up the whole estate under the appropriation of it by the legislature to a public use, and receive therefor a full indemnity. In this view, the assessment in question cannot be regarded as imposed on the plaintiff against his will, but as one which he has voluntarily assumed in order to save a portion of his estate from being appropriated under the right of eminent domain to a public use. He stands in such relation towards

the defendants as to render the maxim *volenti non fit injuria* an answer to the case made by the bill.

Upon these grounds we are of opinion that the plaintiff shows no claim to equitable relief, and that the order must be

*Bill dismissed.*