# THE COLORADO LAW REPORTER.

VOL. II.]                    DENVER, MAY, 1882.                    [NO. 9

## PALMER *v.* RAY *et al.* and THE CITY OF DENVER.

*(Supreme Court of Colorado, December Term, 1881—Error to the District Court of Arapahoe County.)*

1. TAXATION—ASSESSMENT—SIDEWALKS—EMINENT DOMAIN. There is but one mode of taxation provided in the constitution of Colorado. This mode requires that all taxes must be "uniform upon the same class of subjects within the territorial limits of the authority levying the tax," and assessed upon all property according to its just valuation.

Assessments upon abutting property to defray the cost of making sidewalks are a form of taxation. Street improvements, being mainly for the public benefit, it would contravene the rule of uniformity as well as that of valuation, to impose the whole burden, or an unequal portion of it, upon part only "of the same class of subjects within the territorial limits of the authority levying the tax." Hence, neither under the taxing power, nor under the right of eminent domain, can the cost of making sidewalks be assessed against abutting property.

2. POLICE POWER—SIDEWALKS. Though the authority to regulate the relative rights, privileges and duties of individuals in society in respect to property or business is a mere police regulation, yet it may assume the form of taxation, and, under the police powers of municipal corporations, the owners of adjacent lots may be required, at their own expense, to construct sidewalks, and the cost thereof may be made a lien upon such abutting lots.

BECK, J. The question here presented is the validity of an ordinance of the city of Denver relating to sidewalks.

It requires the owners of lots abutting upon streets to construct sidewalks in front of their respective lots at their own expense, in manner provided by the ordinance.

If the owners fail, after due notice has been given, the work is to be done by the city and the expenses of construction are to be assessed against the respective lots fronting the sidewalk, are made liens upon the same, and are to be placed upon the tax list of the current year and collected in the same manner that general city taxes are collected.

49

The authority for this ordinance is found in section 64 of an act of the first General Assembly of this State, entitled, "An act to reduce the law incorporating the City of Denver, and the several acts amendatory thereof, into one act, and to revise and amend the same," approved April 6, 1877.

Section 64 is as follows:　"The expense of the construction and repair of sidewalks shall be assessed upon the property fronting upon the same, and such assessment shall be a lien upon said property until it shall be paid.　In case of failure to pay such assessment in a reasonable time, to be specified by ordinance, the same may be certified to the county clerk and recorder, and by him placed on the tax list for the current year, to be collected in the same manner as general city taxes are now collected, together with ten per centum penalty thereon to defray the cost of collection; provided, that the owner of said property shall have not less than thirty days in which to construct, nor less than five days in which to repair any sidewalk, in accordance with the plan detailed by ordinance, under the supervision of the city engineer."

The principal question discussed in briefs of counsel, is, whether under our constitution the special benefits supposed to result to lots fronting upon a street improvement can be legally assessed upon the lots so benefited, by virtue of the taxing power.

The point is well made, that if assessments of the character under consideration can be sustained as a legitimate exercise of the power of taxation, then assessments for other improvements of a local character, but of greater magnitude, such as grading and paving streets, may be imposed under the same power.

The question involved is one which has received the earnest attention of the ablest lawyers and jurists of this country, as is evidenced by a long line of adjudications, reaching back almost to the foundation of the Government.　The conclusions arrived at in the various cases are certainly not uniform.　In several instances the same Court has reversed its earlier decisions and adopted a different doctrine; and to-day the settled doctrine of each State is based to a great extent upon the peculiar phraseology of its constitution.

In the majority of the States it has been held that no constitutional restrictions exist as to the power of the Legislature to authorize such special assessments.

The provisions of our constitution bearing directly upon this question are sections 3 and 7 of article 10.    Section 3 provides that, "all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal."

Section 7 is as follows:    "The General Assembly shall not impose taxes for the purposes of any county, city, town or other municipal corporation, but may by law vest in the corporate authorities thereof respectively the power to assess and collect taxes for all purposes of such corporation."

There is no provision in the constitution of this State authorizing assessments upon property, except in the sense of taxation for general revenue purposes.

Is there any restriction which confines the exercise of the power to the mode provided?    If not, special assessments for local improvements may be held valid; otherwise they must be declared unconstitutional.    The received doctrine of the Courts is, if there be no constitutional restraint upon the power of taxation, the Legislature may authorize the whole, or a proportion of the burden of such improvements, to be assessed upon the real estate benefited thereby.

Judge Dillon says (2 Dillon Mun. Corp., p. 756, 3d Ed.): "Where there is no·special constitutional requirement, the expense of the local improvement may be authorized by the Legislature, to be apportioned upon some other basis than that of the value of the property within the taxation district."

Supplementary to the above proposition is another, viz: "When not restrained by the constitution of the particular State, the Legislature has a discretion, co-extensive with the broad domain of legislative power in making provision for ascertaining what property is specially benefited, and how the benefit shall be apportioned."

Referring to the constitutional provision of the State of Colorado, it will be apparent that there is but one mode of taxation provided, and that this mode is applicable alike to the levy of taxes for State, county, city and town purposes.    Taxes levied under this mode must "be uniform upon the same class of subjects within the territorial limits of authority levying the tax,"

and must be assessed upon all property according to its "just valuation;" mines and mining claims, except the net proceeds and surface improvements thereof, being for the present exempted.

The rule of taxation as prescribed by section 3 and section 7 authorizes the Legislature to delegate the power of imposing taxes for corporate purposes, subject to the rule, to the several political sub-divisions of the State. The limitation is a very important one, and must be held, in the absence of any other provision qualifying the rule, to be applicable to the levy of all taxes authorized by the taxing power. A certain mode being prescribed, all other modes are excluded, and any act of the Legislature assuming to authorize the levy and collection of taxes, by a mode which ignores the principles of valuation and uniformity, is null and void.

Street improvements in a city are for the benefit of the public, and may be paid for out of the city treasury. This has been repeatedly decided. Being a public purpose and mainly for the public benefit, it would contravene the rule of uniformity, as well as that of valuation, to impose the whole burden, or an unequal proportion thereof, upon a part only "of the same class of subjects within the territorial limits of the authority levying the tax."

If the rule can be ignored as to the streets of a city, no reason is perceived why it may not in like manner be disregarded in the improvement of the highways of a county, or in the construction of public improvements by the State. There being but one rule of taxation prescribed, the State government does not appear to be under any greater obligation to its strict observance than are the municipal governments within the State. If, therefore, the right to impose special assessments is to be referred to the sovereign power of taxation, it would seem that it cannot be sustained under our constitution. The grant of power is limited, and the maxim, *expressio unius*, fairly applies.

An examination of the leading cases which sustain such assessments shows that they were either authorized in terms by the constitution, or that no such limitation was imposed as to restrain the exercise of the power.

In the leading case in New York, *The People* v. *The Mayor of Brooklyn*, 4 Comst., 427, the Court says, "there is not, and since the organization of the State government there has not been

any such constitutional limitation or restraint." That the people "have not ordained that taxation shall be general, so as to embrace all taxable persons within the State, or within any district, or territorial division of the State; nor that it shall or shall not be numerically equal, as in the case of a capitation tax; nor that it must be in the ratio of the value of each man's land, or of his goods, or of both combined; nor that a tax must be co-extensive with the district, or upon all the property in a district which has the character of, and is known to the law as a legal sovereignty. Nor have they ordained or forbidden that a tax shall be apportioned according to the benefit which each tax-payer is supposed to receive from the object on which the tax is expended. In all of these particulars the power of taxation is unrestrained." The learned Judge considered the conclusion arrived at by the Court materially supported by the employment of the term assessments, in the constitution, in connection with the term taxation. The use of this term in the fundamental law, considered with reference to the custom which had always prevailed in that State, of local assessments, was considered as a recognition of that mode of taxation for the purposes of local improvements.

Four years later the question of local assessments came before the Supreme Court of Ohio, in the case of *Hill* v. *Higdon*, 5 Ohio State, 244. The opinion was by Chief Justice Ranney, whose name commands respect alike from bench and bar, and is always a guaranty of sound views in any opinion to which it is attached. He discussed the question: "Can laws, authorizing the corporate authorities of cities and villages to levy a special assessment upon property particularly benefited, for the purpose of improving streets, continue in force, or be now passed consistently with the present constitution of the State?" The constitution then in force required all property to be taxed by a "uniform rule," and "according to its true value in money." The learned Judge's conclusion was, that if laws of the character under consideration were controlled by the constitutional provisions referred to, they could not be sustained, and that since those constitutional provisions were sufficient to enable municipal corporations to raise a revenue for the accomplishment of all their legitimate purposes, in the absence of any other provision to evince the intention of the framers of the constitution, other

modes of levying taxes for any purpose were necessarily excluded. A further provision was, however, found in the sixth section of the thirteenth article of the constitution, which required the General Assembly to "provide for the organization of cities and incorporated villages by general laws; and to restrain their powers of taxation, assessment, etc., so as to prevent the abuse of such power." Under the power of assessment therein conferred, the Court was able to sustain laws of the character under investigation.

Substantially the same constitutional provisions are found in the constitutions of the States of Wisconsin, California and Indiana. Special assessments are sustained solely upon the ground that the custom of imposing them has been recognized and the power continued by the use of both terms, "taxation" and "assessment," in the respective constitutions.

The decisions in these cases are based upon the same line of reasoning, all holding that something specifically different from the ordinary form of taxation was intended by the addition of the word "assessment."

In many other States, the Courts were able to say that their respective constitutions contained no restrictions upon the taxing power inconsistent with legislative authority to authorize special assessments. *Dorgan* v. *City of Boston*, 94 Mass , 235; *Hoyt* v. *City of East Saginaw*, 19 Mich., 43; *Warren* v. *Henley*, 31 Iowa, 32; *Hammett* v. *Philadelphia*, 65 Pa. St., 150; *State, etc.* v. *Mayor of Newark*, 37 N. J. L., 415.

The constitutions of Illinois and Tennessee are very similar, in respect to the subject under investigation, to our own. Both limit the power of taxation throughout the State to the principle of uniformity as to persons and property.

In the former State the Court held that special assessments were not warranted by the constitution, under the right of taxation, but sustained them in a qualified form under the right of eminent domain. *City of Chicago* v. *Larned*, 34 Ill., 275; *Same* v. *Baer*, 41 Ill., 306.

A different conclusion was arrived at in the State of Tennessee, which is reported in 9 Heisk, 349. The questions considered were, whether the law under consideration, which authorized assessments upon the property benefited by public improvements, was valid under the constitution, and whether there

existed in the State government a power which might be dele-
gated to counties or incorporated towns to impose burdens in
the form of local assessments, which should not be subject to the
restrictions or regulations of the constitution, but independent of
these, and subject only to the law-making power.    In an opin-
ion, the reasoning of which seems conclusive, the Court an-
swered both questions in the negative.

Upon a careful examination of authorities, and upon principle,
we are satisfied that the taxing power does not extend under the
constitution of this State to local or special assessments, except
under the constitutional rules.

It only remains to inquire whether the ordinance in question
can be sustained under the right of eminent domain, or under
the police power.

We consider the decided weight of authority is opposed to
the doctrine that special benefits accruing from a public improve-
ment can be assessed against the property so benefited under
the power of eminent domain.    In all the cases cited in this
opinion, except the Illinois cases, the authority for such assess-
ments is referred to the power of taxation, and most of them de-
cide that it is not referable to the right of eminent domain.

Law writers say these powers are in their nature materially
different.    There is no direct specific compensation made for
taxes paid, for money exacted under the taxing power; but prop-
erty can be taken under the right of eminent domain only on
the condition of making to the owner direct and full compensa-
tion for the sacrifice which he would otherwise be obliged to
make to the public.    2 Dillon Mun. Corp., section 738.

Justice Ruggles, in 4 Comst., 424, has defined and distinguished
these powers with such precision and clearness that his views ap-
pear to have received general approval.    He says:    "Taxation
exacts money, or services, from individuals, as and for their re-
spective shares of contribution to any public burthen.    Private
property taken for public use by right of eminent domain is
taken, not as the owner's share of contribution to a public bur-
then, but as so much beyond his share.    Special compensation
is, therefore, to be made in the latter case, because the govern-
ment is a debtor for the property so taken; but not in the for-
mer, because the payment of taxes is a duty, and creates no
obligation to repay, otherwise than in the proper application

of the tax.    Taxation operates upon a community, or upon a class of persons in a community, and by some rule of apportionment.    The exercise of the right of eminent domain operates upon an individual, without reference to the amount or value exacted from any other individual or class of individuals."

Mr. Cooley, in his work upon taxation, cites with approval the foregoing distinctions, and adds :    "Attention to the distinction here pointed out will make clear the fact that special assessments are not an exercise of the right of eminent domain.    It is certain that when they are levied according to benefits received, they cannot be.    The theory of the law is, that full compensation is then received in every instance."    Cooley on Taxation, pp. 430, 431.

We deem these authorities conclusive upon this point.

Can the ordinance be sustained under the police power?

The improvement here is merely the construction of a sidewalk.    The grading is done by the city, as we understand the ordinance, and it is only required that the owners of lots abutting upon the streets named therein, shall furnish and lay down the necessary materials.

That special or local assessments, in the general sense of the term, cannot be sustained under this power, will hardly admit of discussion.    We have seen that there is great unanimity of opinion that assessments for the grading and paving of streets, for example, are a branch of the taxing power.

The province of the police power is the preservation of order, and the making of such rules and regulations as shall be conducive to the health, comfort and protection of society, and not primarily the raising of revenue.

It has been held that the authority to regulate the relative rights, privileges and duties of individuals in society, in respect to property or business, although a mere police regulation, may assume the form of taxation, and even be designated by that name.

The limitation is, that "only those cases where regulation is the primary purpose, can be specially referred to the police power."    (Cooley on Taxation, pp. 396–7.)    Under the head, "Sidewalk Assessments," *supra*, p. 398, Mr. Cooley says :    "The cases of assessments for the construction of walks by the side of the streets, in cities and other populous places, are more distinctly referable to the power of police.    These footwalks are

not only required, as a rule, to be put and kept in proper condition for use by the adjacent proprietors, but it is quite customary to confer by the municipal charters full authority upon the municipalities to order walks of a kind and quality by them prescribed, to be constructed by the owners of adjacent lots at their own expense, within a time limited by the order for the purpose, and that in case of their failure so to construct them, it shall be done by the public authorities, and the cost collected from such owners, or made a lien upon their property. When this is done the duty must be looked upon as a regulation of police, made because of the peculiar interest such owners have in the walks, and because their situation gives them peculiar fitness and ability for performing with promptness and convenience the duty of putting them in proper state, and of afterwards keeping them in a condition suitable for use."

The text is supported by several citations of adjudged cases, among which are *Goddard, petitioner*, 16 Pick., 504, opinion by Chief Justice Shaw.

In two cases in the State of Tennessee, ordinances of the nature under consideration were sustained as a proper exercise of the police power. Both cases held that it was not a proper exercise of the taxing power, but might be supported as a police regulation. (*Mayor and Aldermen* v. *Mayberry*, 6 Hun., 371; *Washington* v. *Aldermen of Nashville*, 1 Swan, 177.) The same doctrine was announced in New Jersey in the case of *The State*, *etc.*, v. *Mayor of Newark*, 8 Vroom, 423. The Court says: "A sidewalk has always, in the laws and usages of this State, been regarded as an appendage to and part of the premises to which it is attached; and is so essential to the beneficial use of such premises that its improvement may well be regarded as a burthen belonging to the ownership of the land, and the order or requisition for such improvement, as a police regulation."

Limiting the doctrine to the facts before us, viz: To the construction of the sidewalk exclusive of substantial grading, we are disposed to uphold the ordinance as a police regulation. We think the authorities may fairly be said to go thus far, in view of the long established custom prevailing here and elsewhere throughout the Terrritory and State, requiring sidewalks to be constructed and kept in repair and free from obstruction by the owners of property abutting upon the public streets. Mr. Cooley says,

50

*supra*, p. 397: "Custom has much to do in determining whether certain classes of exactions are to be regarded as taxes or as duties imposed for regulation. If by the common understanding and general custom of the country a particular duty is required as being imposed upon certain individuals, not as their proportionate share in the burden of government, but because of some certain relation to property peculiarly located, or to business peculiarly troublesome or dangerous, so that a requirement that the duty shall be performed by such individuals, is usually regarded as only in the nature of regulation of relative obligations and duties through the neighborhood or municipality, there is no sufficient reason why this may not be considered a mere police regulation, though the proceedings assume the form of taxation."

The judgment of the Court below is *affirmed*.