CITY OF PUEBLO ET AL. V. ROBINSON ET AL.

1. MUNICIPAL CORPORATIONS — CITIES OF THE SECOND CLASS — SEWERS — SPECIAL ASSESSMENTS — POLICE POWER.— The established doctrine of this court is, that under the state constitution the power to make special assessments for local improvements must be confined to purposes clearly within the domain of *police regulations;* also that special assessments for the construction of sewers within the cities of the state are within the police power. The same doctrine and rule of decision is applicable to cities of the *second* class, and the city council may authorize the county treasurer to collect a sewer assessment by sale of the lots assessed.

2. SAME — RULE OF APPORTIONMENT.— In cases where special assessments are authorized, the city council may prescribe the rule of apportionment, having reference to the special benefits accruing to the property by reason of the improvement, the same to be such as will secure an assessment in proportion to the benefits accruing as nearly as practicable.

3. Where it does not affirmatively appear that the mode of assessment adopted will work manifest injustice it should be upheld.

*Appeal from District Court of Pueblo County.*

THIS was a case submitted to the district court in June, 1885, upon an agreed statement of facts showing that the city of Pueblo was at the time of such submission, and at all times to which the statement relates, a duly organized city of the second class, under an act of the general assembly of this state relating to municipal corporations, approved April 4, 1877, and the acts amenda-

tory thereof, and that the defendant, Christopher Wilson, was at the time of such submission the treasurer of Pueblo county.

In October, 1881, the city council of Pueblo passed a general ordinance prescribing the mode of determining local assessments for certain public improvements, which provided for an "apportionment of the charges to be assessed among the private owners, and their lots or lands and the city, *pro rata*, according to the number of feet fronting or abutting on or opposite to said work; the city to be charged according to the width in feet of the intersections on one or both sides of streets and alleys as the case may require; provided, that in assessing the costs of sewers, where the sides of lots merely abut on the work without deriving any benefit therefrom, the council may, in the ordinance or resolution authorizing the construction of the sewer, exempt such lots from part or all the costs thereof."

Thereafter ordinances authorizing the construction of certain sewers were passed, as follows: "That a sewer be laid and constructed in and through the alley next west of Santa Fé avenue, from Sixth street to Front street, for the use and benefits of lots on the west side of Santa Fé avenue, between said streets; and the cost of said sewer is hereby directed to be charged on the respective owners of said lots, and on said lots, and on the city for the intersection of cross-streets."

Also an ordinance similar to the one last above recited was passed, extending the aforesaid sewer from Sixth street to Eighth street in said city, through the alley west of Santa Fé avenue, and directing the costs to be assessed against lots abutting on said sewer and on the west side of Santa Fé avenue.

Thereafter, by virtue of similar ordinances, certain other lateral sewers running in the cross-streets and alleys, and connecting with the sewer provided for in the ordinances hereinbefore recited, were ordered to be con-

structed for the benefit of the lots abutting thereon, and
the cost thereof directed to be similarly assessed against
the said lot owners.

That the said sewers were in fact constructed, as pro-
vided by the said ordinances, in a good, workman-like
manner, and the said city of Pueblo accepted and paid
for the same, and assessed the costs thereof, in the man-
ner provided by the aforesaid ordinance passed in Octo-
ber, 1881, against the owners of the lots abutting on said
sewer.

It was further provided that such assessments should
constitute a lien against such lots respectively; and that
the same should be collected and paid over by the county
treasurer in the same manner as general city taxes.   The
owners of said lots having failed to pay said assessments,
the county treasurer was proceeding to advertise said
lots for sale, whereupon this case was instituted as afore-
said, and the points in controversy upon which the decis-
ion of the court is asked are as follows: " Are the said
assessments legal and valid in law as special assessments
against the property described?   And has the county
treasurer authority to collect the same by sale of afore-
said property?"

The district court adjudged the assessments illegal, and
perpetually enjoined the collection thereof.   The city of
Pueblo and the county treasurer bring this appeal.

Mr. CHAS. C. STEIN, for appellants.

Mr. CHAS. E. GAST, for appellees.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The constitution of the state (art. 10, sec. 7) provides
that the general assembly may, by law, vest in the cor-
porate authorities of any county, city, town or other
municipal corporation, respectively, the power to assess
and collect taxes for all purposes of such corporation.

Section 3 of the same article provides that "all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax. * * *" It has been held that the word "taxes," as used in the section last referred to, does not include special assessments against property specially benefited by local improvements; but the decisions of this court are to the effect that such assessments cannot be upheld, under the uniformity rule of taxation, unless the improvements are clearly within the domain of police regulations. Cooley, Tax'n, 444; 2 Dill. Mun. Corp. § 761; *Emery v. Gas Co.* 28 Cal. 345; *Palmer v. Way*, 6 Colo. 106; *Brown v. City of Denver*, 7 Colo. 305; *Keese v. City of Denver*, 10 Colo. 112.

"The province of the police power," says Justice BECK in *Palmer v. Way, supra*, "is the preservation of order, and the making of such rules and regulations as shall be conducive to the health, comfort and protection of society, and not primarily the raising of revenue." In *Keese v. City of Denver, supra*, Mr. Commissioner RISING says: "Sewer assessments are within this [police] power."

A good system of sewerage in a populous city is undoubtedly as essential to the health and comfort of society in the immediate vicinity thereof as good sidewalks, and therefore may properly be classified among the local improvements by which the property adjacent thereto may be specially benefited, and for the construction of which special assessments may be levied. This doctrine is clearly applicable where the sewers are confined to comparatively narrow limits, and are constructed for the special benefit of the abutting property. Cooley, Tax'n, 399–450; 2 Dill. Mun. Corp. § 809.

Under our constitution the power to make special assessments for local improvements must be confined to purposes clearly within the domain of police regulations. The power must be granted by the general assembly in express terms, or by necessary implication; and when so

granted must be strictly construed by the courts and strictly followed by the municipality attempting to exercise the same, else the assessments made thereunder will not be valid. Cooley, Tax'n, 418; 2 Dill. Mun. Corp. § 763.

The authority to make special assessments for the construction of sewers in cities being within the police power of the state, it remains for us to determine whether or not such power has been conferred upon cities of the second class. Referring to the act of April 4, 1877 (Gen. Laws, ch. 100; Gen. St. ch. 109), we find that by section 14 the city council is invested, *inter alia*, with power (paragraph 3) "to levy and collect taxes for general and special purposes on real and personal property;" also (paragraph 10) "to construct and keep in repair culverts, drains, sewers and cess-pools, and to regulate the use thereof." The same section further provides (paragraph 75) that "each municipal corporation may, by general ordinance, prescribe the mode in which the charge on the respective owners of lots or lands, and on the lots or lands, shall be assessed and determined for the purposes authorized by this act. Such charge, when assessed, shall be payable by the owner or owners at the time of the assessment personally, and also by a lien upon the respective lots or parcels of land from the time of the assessment." This would seem to be ample authority for the action of the city council of Pueblo in this case. But it is contended that the words "for the purposes authorized by this act," in paragraph 75, are limited to the charges authorized by paragraph 71 to be assessed for water or gas rents in case water or gas works should be constructed by any city or incorporated town. This position would be exceedingly plausible were it not that in making provision for the collection of such charges the same paragraph further on says: "In any such proceedings, where pleadings are required, it shall be sufficient to declare generally for work and labor done and

materials furnished on the particular street, alley or highway, or for water rent or gas used; " thus plainly showing that it was the design of the act to authorize special assessments for other purposes than gas or water rents.

The whole tenor of the act under consideration, and especially sections 39, 47, 53 and 54, in addition to the parts already referred to in this opinion, show a deliberate intention to invest the city council with ample power over the subject of municipal improvements, not only by means of general and special taxes, but also by means of special charges or assessments, in all cases where the same are applicable and allowable by the constitution and laws of the state, and to authorize the collection thereof by suit in court, or by the county treasurer, in the same manner as other delinquent taxes are collected.

In the language of Mr. Justice Stuart in *Kyle v. Malin,* 8 Ind. 37: "The action of municipal corporations is to be held strictly within the limits prescribed by statute. Within these limits they are to be favored by the courts. Powers expressly granted, or necessarily implied, are not to be defeated or impaired by a stringent construction."

The objection that the general assembly, and not the city council, must prescribe the rule of apportionment in case of special assessments for local improvements is not well taken.    Undoubtedly such rule might be prescribed by the law of the state, and, when so prescribed, must be followed; but if such power be vested in the corporate authorities, and a reasonable rule be prescribed by general ordinance, it is certainly sufficient under a government like ours.    It is true that when such public powers have been conferred upon the municipality to be exercised by its council, as by the passage of a general ordinance, such powers can be exercised in no other way, nor can there be any delegation thereof to others; but when exercised in conformity to the constitution and the provision of the municipal charter, they have the force and effect of legislative enactments for all municipal

purposes. 1 Dill. Mun. Corp. § 308; 2 Dill. Mun. Corp. § 779; *Foss v. Chicago*, 56 Ill. 354; Cooley, Tax'n, 449.

The mode of apportionment by which local assessments are to be made must have reference to the special benefits accruing to the property by reason of the improvement — that is, benefits in addition to those received by the community in general; and the rule must be such as will secure an assessment in proportion to such benefits as nearly as is reasonably practicable. Rules of apportionment according to value, area and frontage of the property benefited have in turn been approved and disapproved under varying circumstances. Absolute equality is not to be expected. A reasonable approximation thereto is all that can be required; and, when the proper legislative body prescribes in good faith a rule by which this may be attained with reasonable certainty, it should not be overthrown. When the property consists of lots of substantially equal depth abutting the local improvement, and there is nothing in the nature and circumstances of the particular case showing that an assessment in proportion to the frontage of the lots upon the improvement would work manifest injustice, such a mode of assessment should be upheld. 2 Dill. Mun. Corp. § 761; Cooley, Tax'n, 447; *Thomas v. Gain*, 35 Mich. 155; *Allen v. Drew*, 44 Vt. 174.

By the agreed statement of facts it does not affirmatively appear that the lots on the east side of Santa Fé avenue were exempted from assessment because the sides of such lots abutted on the sewer without deriving any benefit therefrom, though the argument of counsel for appellees virtually concedes that the exempted lots do abut laterally. Neither does it appear whether the lots assessed were of substantially uniform depth or otherwise. In view of the fact, however, that appellees, in applying for the injunction, assume substantially the affirmative of the issue, we must, where the agreed statement is silent, resolve mere questions of fact against

them.   Since there is nothing in the mode of assessment which would necessarily produce inequality, we must presume there is nothing in the nature or circumstances of the particular case that will work manifest injustice, else appellees would have included the same in the agreed statement.

We are of the opinion that the assessments are valid, and we perceive no reason why the county treasurer should not proceed to collect the same.   The judgment of the district court is reversed and the cause remanded.

*Reversed.*