[No. 1351.   Decided June 2, 1894.]

*In the Matter of the Petition of A. A. Smith et al. for a County Road: WILLIAM COCHRANE, Appellant.*

CONSTITUTIONAL LAW — APPROPRIATION OF LAND FOR COUNTY ROAD — COMPENSATION.

The act of March 9, 1893 (Laws, p. 237), providing for the location of county roads and award of damages therefor, is unconstitutional as to resident owners of lands appropriated, for the reason that it does not provide for personal service upon them of notice of the proceeding, and for the further reason that it provides for the awarding of compensation upon the report of the viewers, without the submission of the question to a jury. (HOYT. J., dissents.)

The issuance of a warrant upon a county treasurer in payment of an award of damages for lands appropriated by the county is a sufficient compliance with the constitutional provision requiring the making of just compensation in such cases, when there are funds in the treasury out of which such warrant can be paid.

*Appeal from Superior Court, King County.*

*Stratton, Lewis & Gilman,* and *D. G. Inverarity,* for appellant.

*John F. Miller,* and *A. G. McBride,* for respondents.

The opinion of the court was delivered by

STILES, J. — To a petition addressed to the superior court of King county, for the establishment of a county

road, appellant filed objections, some of which appear to have been proper and necessarily to be passed upon before any step could be taken by the court. For example: (1) the objection that ten freeholders had not petitioned; (2) that the proposed road was impracticable, and intended only to subserve certain private interests; (3) that no due or proper notice of the proceeding had been given. Whether these points, all of which were jurisdictional, were passed upon or not, the record does not disclose.

But there were other objections which were in the nature of a demurrer, or grounds attacking the constitutionality of the act of March 9, 1893 (Laws, p. 237), and these having been overruled, the case is brought here by appeal, upon them alone.

Appellant qualifies himself to make objection to the validity of the law by showing that he is a resident owner of certain lands, part of which will have to be taken for the road as proposed, and his first point is that the act does not provide for personal service of notice of the proceedings upon owners of his class. Two kinds of constructive service are provided for. First there is a notice by posting, which was probably intended rather to affect the public generally than owners of lands. The county is required to pay for land taken, and maintain these roads, although it appears to have no voice in the matter through any of its officers, and it may be supposed that the posted notice will serve to inform citizens generally that a new expense will be incurred at the *ipse dixit* of ten freeholders, unless some one shall remonstrate. But after the route of the road has been surveyed, and the plat and award of damages has been filed by the viewers, the clerk is required to publish a notice that the court will hear the petition and consider the report of the viewers on a day fixed; and this notice is probably intended to be for the particular benefit of owners of lands taken, since, in their report, the viewers

are particularly directed to describe the land appropriated and give the names of owners, if known, or, if they are unknown, to state the fact. It seems from the seventh section that the final question as to whether the road is practicable and will be of general use and public benefit is to be left open until the hearing under the published notice, and that if any one objects to the award the court may call a jury and "hear testimony on the subject." But they failing to appear and contest, the evident intention is, that owners shall be concluded by the award made by the viewers, and the order of the court thereon. That such an award could not stand under our constitution is plain. The mandate of the instrument is that the compensation to be paid for a taking of property for a public purpose shall be ascertained by a jury, unless a jury be waived as in other civil cases, in the manner prescribed by law. Art. 1, § 16. Now a waiver may take place by the failure of a party to appear at the trial; but in no case analogous to this does a judgment follow as matter of course for the sum prayed for in the complaint. The court may still call a jury, but if it consents to the waiver it must hear the evidence and render judgment accordingly. A suit for damages is nearest like a condemnation case; and yet, under this act, there is no complaint, no allegation of damage, and no evidence. The report of the viewers, of course, contains their finding, and it might be taken as a complaint containing an allegation of damage in a negative sort of way; but it is an unsworn paper, the viewers are not present in court, and it states no facts which would enable the court to pass a judgment upon the actual damage. An acceptance of the award by an owner would doubtless estop him from any further criticism of the proceeding; but it is not such cases that the law was intended to meet.

Returning to the question of notice: There is no doubt that the prevailing number of cases and perhaps the weight

of authority, the country over, is that in condemnation cases the legislature has the power to prescribe the kind of notice, whether personal or constructive, which shall be given to property owners, resident or non-resident. Lewis on Em. Dom., §367; Brown on Jurisdiction, §172; Elliott on Roads and Streets, pp. 152–3.

In the case of non-residents no other method is practicable, and it fulfills the requirement of due process of law under both state and federal constitutions. *Huling v. Kaw Valley Railway Co.*, 130 U. S. 559 (9 Sup. Ct. 603). But the decisions as to residents are not entirely unanimous, the supreme courts of Michigan, Wisconsin and California holding that personal notice is necessary when the owner resides within the jurisdiction. *Kundinger v. Saginaw*, 59 Mich. 355 (26 N. W. 634); *State v. Fond du Lac*, 42 Wis. 287; *Mulligan v. Smith*, 59 Cal. 206. Mr. Lewis, in the section cited, gives it as his personal view that these courts have the best of the reasoning.

So far as this state is concerned, the principal reason given by the supreme court of Michigan, viz., that of a long course of legislative practice amounting to a construction that actual notice was required by the constitution, prevails, for such notice has been and is the general rule in the territory and state. All cities and towns, *quasi* public corporations, and even the state itself, have to pursue that method of acquiring jurisdiction, and it would probably cause a revolution were it proposed that railroad companies should have such damages assessed upon notices posted in three or four places of their own selection.

It has been frequently said by courts that the taking of land by eminent domain is a proceeding *in rem*, and the service of a constructive notice has been justified by the practice which prevails in that class of cases. But it is well known that proceedings *in rem* presuppose that the complaining party has a superior right to the subject of the

suit, or a right to have it subjected to his claim, and that the first requisite is a seizure of the thing itself, after which follows notice. "The theory of the law is that all property is in the possession of its owner, in person or by agent, and that its seizure will, therefore, operate to impart notice to him." *Windsor v. McVeigh*, 93 U. S. 274. But the same case holds most emphatically that, in addition to the seizure, there must be notice. In attachment cases property must be taken into the custody of the court before any step can be taken based on a constructive service; and if the subject of the seizure is land, there must be a levy and some act of posting, or service upon the occupant, or record in the registry of deeds, to take the place of possession. In divorce cases the jurisdiction of the court to make a disposition of property requires that the property be described in the complaint. *Philbrick v. Andrews*, 8 Wash. 7 (35 Pac. 358). And in probate cases, without an inventory of property in the hands of the administrator, there can be no order affecting the real estate of the decedent.

In those states where the legislature is the sole judge of what is a public use of property under their eminent domain laws, it may be possible that the declaration of intention and the award of damages made in regard to land particularly described might be construed as the taking, as was done in *McMicken v. Cincinnati*, 4 Ohio St. 395. But in this state no such result can occur, because our constitution expressly takes away from the legislature the power to determine what is a proper purpose for the condemnation of property, and vests it in the judiciary, so that each owner has the right to contest the proposed taking as against him on that ground. There is no authority, therefore, for a preliminary seizure, and the prime requisite of a proceeding *in rem* fails at the outset. Again, it has been held, though at an early period only, that no part of the proceeding to take lands, including the assessment of damages, is

judicial, but that view, as a general proposition, has been long since set aside, and it is now universally agreed that the assessment is judicial. *Monongahela Navigation Co. v. United States*, 148 U. S. 312 (13 Sup. Ct. 623). And our constitution also settles that point.

Under the simple constitutional provision of Nebraska that, "No property shall be taken or damaged for public use without just compensation therefor," the supreme court of that state held, in *Pawnee County v. Storm*, 34 Neb. 735 (52 N. W. 696), that while constructive service would serve to authorize the location of a road, the owner of land over which it was located who did not have actual notice of the proceeding could not be deprived of his right to damages by his failure to make demand therefor, if he presented his claim within a reasonable time. But in the presence of a requirement that the damages be ascertained and paid before the taking, there is no room in this state for an adjustment of equities such as was there made. We think the provisions of our constitution imply that in condemnation proceedings the same general character of notice will be given to persons whose rights are to be affected as was customary in the territory, in actions legal or equitable affecting property real or personal, and that this law does not meet that requirement.

In *Monongahela Co. v. United States*, which was a condemnation proceeding undertaken by the government under a special act of congress, Justice Brewer, speaking of the necessity that the courts are under to guard private rights · guaranteed by constitutional provisions, quotes with approval the language of Justice Bradley in *Boyd v. United States*, 116 U. S. 616 (6 Sup. Ct. 524), as follows:

"Illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitu-

tional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be *obsta principiis*."

We must regard it as a mere lapse that the legislature should in this instance have failed to provide for the same sort of service that it required in the act of 1891, where the state was authorized to condemn lands, and in all the other acts, both public and *quasi* public, on the same subject. Were the point yielded in this instance, we should probably soon have further encroachments, when laws for the taking of lands for ditches, flumes, drains and private roads came to be passed; for the instinct of interest would be present to induce the legislature to provide ways of giving notice in which there would be a large chance that the proceeding might be entirely *ex parte*, and without the knowledge of the person to be affected. Therefore we feel impelled to pronounce this act, as to the appellant, unconstitutional, although it is with much regret, as it is stated that without this law there is no way of opening a road through the lands of an unwilling resident.

Another point is made against the payment of awards by warrant on the county treasurer. The just compensation required means a money compensation beyond question. But in the case of a public corporation, which is required to make its disbursements in a certain prescribed method, we think compensation would be made within the meaning of the constitution by the issuance of a warrant in the ordinary way, if there were funds in the treasury out of which it would be paid upon presentation. That would be a payment in money. If after the decree had been made it should turn out that there were no funds for

present payment of a warrant, it might be questionable whether the land owner would be under any obligation to surrender possession of his property until the fund was created. And if it should appear in the condemnation proceeding that by reason of the county's financial condition no such fund could be created within a reasonable time, the proceeding ought to abate. In *Keene v. Bristol*, 26 Pa. St. 46, an injunction was issued restraining a borough from taking possession of lands condemned because there was no present ability on its part to accumulate the money necessary for compensation. But on this ground we do not hold the act invalid. It may be that the warrant of the auditor of King county would be paid at once on presentation to the treasurer.

Judgment reversed and petition dismissed as to appellant.

DUNBAR, C. J., and ANDERS, J., concur.

SCOTT, J., dissents.

HOYT, J. (*dissenting*).—I am unable to agree with the conclusions of the majority stated in the foregoing opinion. It is conceded therein that the greater number of the decided cases is in favor of the proposition that it is within the power of the legislature to provide for constructive notice in proceedings of this kind. And in my opinion the weight of reason and authority is to the same effect. The reasoning of the majority by which it is attempted to detract from the force of the cases so holding, and to show that under our constitution they are not in point, though ingenious, is unsatisfactory to my mind. But even if it were satisfactory, from the premises which are assumed as its foundation I should still be unable to concur therein, as I am unable to interpret the provisions of our constitution, which are referred to and used as a foundation for the argument, as do the majority of the court. It is therein assumed that under the provisions of § 16 of art. 1 of our

constitution, municipal corporations, as well as all others, must first make compensation in money before they can appropriate a right-of-way. I am unable thus to construe the section. It is true that in the case of *Lewis v. Seattle*, 5 Wash. 741 (32 Pac. 794), it was held that such was its proper construction, but this question was not necessarily involved in that case, and upon further consideration I think what was said therein upon that question was not warranted by the language of the section of the constitution under consideration. In that case it was held that the provision which required that the damages assessed should be irrespective of any benefit from any proposed improvement did not apply when the condemnation was sought by a municipal corporation, and a like course of reasoning would exempt municipal corporations from the prior payment of the damages in money. In fact, when we apply to the provisions of that section the ordinary rules of interpretation such construction seems to me a necessary one. One of such rules is that every word must, if possible, be given significance; hence it must follow that the word "first" before "made" in the second clause relating to the subject must be given force, and, if it is, the result will be that as to municipal corporations the compensation need not be first made in money or ascertained and paid into court for the owner. In the first clause it is provided that no property shall be taken or damaged without just compensation having been first made, and if the intent had been to make the same rule applicable to the appropriation of rights-of-way by municipal corporations there would have been no use whatever in again inserting the word "first." If, as claimed by the majority, the second clause is to be governed by the provisions of the first, the intent would have been made clear if the word "first" had not been repeated. It follows that, under the construction given by the majority, the use of the word "first" the

second time is disregarded and the rule above referred to violated, while the construction which results in holding that by the language of the second clause municipal corporations were exempted not only from the provision as to the setting off of benefits, but also from the one as to prior payment, every word will be given force, and the general rule of construction followed. This construction will result in no hardship not fully contemplated by the language of the constitution, for the general provision will still apply to municipal corporations that they can take or damage no property without just compensation. The only effect will be to allow such corporations to take possession of property necessary for their use upon providing that there shall be paid therefor just compensation. This construction may at times work some little hardship upon property owners, but it will be insignificant when compared to the benefit to the public flowing therefrom. The method in which municipal corporations do their business is such that public policy demands that an exception be made as to the time of payment, and that they should be allowed to take possession of property condemned whenever under the law they have taken such steps that the owner is assured of just compensation, and such, to my mind, was the evident intent of the constitution makers when they made use of the language under consideration.

I see no reason for the suggestions of evil growing out of such a holding contained in the opinion of the majority. The action of the legislatures of the several states has always been in the line of proper protection of property rights. That this has been the tendency is shown by the fact that in many of the states the strongest provisions as to such protection are contained in the acts of their legislature, and not in their constitutions. The legislative, as a coördinate branch of the government, is charged with certain duties, and the courts have no greater right to assume

that it will depart from its proper functions than it has to impugn the motives or practices of the judiciary.

There is one other objection to the law under consideration, made by the majority, which I desire to mention. Doubt is therein expressed as to the right of the legislature to provide the method set out in said law by which the damages may be ascertained. It is argued that the requirement that the damages shall be assessed by a jury, unless waived, is not given force by the course of proceeding marked out by the statute. The owner is given the right to have the damages assessed by a jury if he appears and asks it, and if he does not do so he has waived such right in one of the methods provided by the statute. If he does not appear, the court will proceed as in any other case to adjudicate against him upon the record, and such proofs as by the statute or the practice of the court are requisite in the case under consideration. Every statute enacted by a legislature should be sustained unless its conflict with the constitution is so plain that there is no foundation for two opinions in regard to the question. Apply this rule to the statute under consideration and the result will be that it should be held valid. In my opinion the judgment of the superior court was right and should be affirmed.