[No. 1830.  Decided November 14, 1895.]

# LEWIS SEANOR et al., Appellants, v. THE BOARD OF COUNTY COMMISSIONERS, AND E. W. PURDY, as Treasurer of Whatcom County, Respondents.

CONSTITUTIONAL LAW — APPROPRIATION OF LAND FOR HIGHWAYS — STATUTE VALID IN PART — ASSESSMENT FOR IMPROVEMENT OF COUNTY ROADS — OBJECTIONS TO.

That portion of the act of March 15, 1893 (Laws 1893, p. 301), providing for the appropriation of right of way for the construction of county roads is unconstitutional, since it conflicts with the provisions of art. 1, § 16, of the state constitution, requiring the damages for the appropriation of land for such purposes to be ascertained by a jury, unless a jury be waived, in a proceeding instituted for that purpose.

That portion of the act of March 15, 1893 (Laws 1893, p. 301), which provides for the improvement of county roads already located, is valid, the provisions therefor not being dependent upon the sections of the act which are unconstitutional.

The provision of the state constitution (art. 11, § 12), that the legislature shall not impose taxes upon municipal corporations for municipal purposes is not violated by the enactment of the statute (Laws 1893, p. 301), providing for the establishment and improvement of highways in counties, the assessment for which improvements is to be levied by the county commissioners in certain proportions against the taxable property of the county, of certain cities, and of the road districts through which the highway may pass, and upon the property abutting upon the highway, as the improvement is for a county purpose, and an assessment therefor is not a tax within the meaning of the constitution.

The provisions of §§ 18, 19, Laws 1893, p. 301, requiring that when an aggrieved party appeals in the proceedings for the establishment of a highway, the clerk of the county commissioners shall transmit the record to the superior judge of the county, who shall file the transcript and docket the case, is not open to the objection that it imposes a public employment upon judges which is non-judicial, in violation of the prohibition of art. 4, § 15, of the constitution.

Failure of the county commissioners to assess the taxable property of a certain city liable for a pro rata share of one-sixth of the assessment for a county road, the expense of which was to be divided

in specified proportions between the county, certain cities, road districts, and abutting property, affords no ground of complaint to one assessed as an abutting owner.

Appeal from Superior Court, Whatcom County.— Hon. John R. Winn, Judge.   Affirmed.

*Bruce, Brown & Cleveland*, for appellants.

*G. V. Alexander, J. R. Crites*, and *Kerr & McCord*, for respondents.

The opinion of the court was delivered by

Dunbar, J.—This action is prosecuted by the plaintiffs as tax-payers, in behalf of themselves and all other tax-payers of Whatcom county, to determine the validity of the taxes and special assessments levied for road purposes by the authorities of Whatcom county acting under the provisions of the act of March 15, 1893, set out in the Laws of 1893, at page 301, *et seq*.

The defendants demurred to the complaint on the grounds:

1st.  Want of jurisdiction over the defendants or the subject matter.

2d.  The plaintiffs have no legal capacity to sue.

3d.  Defect of parties plaintiff.

4th.  Defect of parties defendant.

5th.  Mis-joinder of causes of action.

6th.  That the complaint does not state facts sufficient to constitute a cause of action.

The demurrer was sustained, and the plaintiffs elected to stand on their pleadings; judgment of dismissal was awarded, and the case comes to this court upon the record.

We will first notice the contention that the act is in violation of § 16, art. 1, of the state constitution. This provision has been so often construed by this

4—13 WASH.

court in connection with kindred acts that the law, it seems to us, ought to be pretty well settled, so far as a portion of this act is concerned, viz., the procuring a right of way.    In *Peterson v. Smith*, 6 Wash. 163 (32 Pac. 1050), where the court had under consideration the law providing for a change of a county road under the provisions of ch. 19, Laws 1890, this court decided that the provision of § 16, art. 1, of the constitution, that " no private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner, and no right of way shall be appropriated to the use of any corporation other than municipal until full compensation therefor be first made in money, or ascertained and paid into court for the owner, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury, unless a jury be waived, as in other civil cases in courts of record, in the manner prescribed by law," meant just what it said, and that under that guaranty the owner of the land appropriated by a county could not be compelled to present a claim for damages; that he could remain quiet and be assured that before his property is condemned the county must ascertain his damage, and either pay it to him or pay it into court for his benefit; and the amount of his damages must be ascertained in a court, in a proceeding instituted for that purpose, and in which the defendant can appear and make his showing, if he so desire, following the doctrine laid down by the supreme court of California in *Weber v. Board of Supervisors*, 59 Cal. 265.    The same doctrine was announced in the matter of the petition of A. A. Smith *et al.,—In re Smith*, 9 Wash. 85 (37 Pac. 311, 494),— and in *Askam v. King Co.*, 9 Wash. 1 (36 Pac.

1097), where it was held that the drainage law of this state was unconstitutional because it provided for the taking of private property without compensation, for the purpose of constructing ditches to drain swamps. It is true that in that case it was said by the writer of the opinion that "If the law had provided for even an *ex parte* assessment of damages, and that such assessment should be filed and, unless objected to, confirmed, it might be possible to sustain it on the ground that such assessment of damages and its filing in a proceeding to which the property owner had been made a party by proper notice was in the nature of a proffer to him of just compensation, and if he did not appear and object thereto such failure on his part might be taken to be a waiver of the right to have his damages assessed by a jury;" but the decision in that case was based upon the law as announced in *Peterson v. Smith*, *supra*, which provided, as we have before said, that the damages must be ascertained and paid into the court in the first instance for the benefit of the party whose land was sought to be subjugated. This same doctrine was announced in *Hayward v. Snohomish County*, 11 Wash. 429 (39 Pac. 652), and the cases of *Peterson v. Smith* and *Askam v. King County*, *supra*, were reviewed and the doctrine therein announced re-indorsed. The doctrine thus announced and followed uniformly by this court would not permit the constitutional right of a citizen, to receive damages at the hands of the court, to be submitted to appraisers appointed by the board of county commissioners; and while courts should always hesitate to pronounce a law unconstitutional which is manifestly enacted for the best interests of the country, yet it is their bounden duty to see that the provisions of the constitution are maintained inviolate, and that the right of the citizen to

implicitly rely upon its plain guaranties shall not be destroyed by construction; hence we are compelled to hold that that portion of the law under discussion which provides for appropriating the right of way for roads cannot be maintained under the provisions of the constitution above referred to.

But we are inclined to think that the contention of the respondent that this law, so far as it applies to improvements on roads which have already been located, can be maintained. Of course it is a proposition of law too elementary to need discussion that the fact that a portion of an act is unconstitutional will not render the whole act unconstitutional, if the act, purged of such portion, is capable of being executed in conformity with the legislative intent; in other words, if the provisions of the act are not found to be inter-dependent, and so woven together that the abolition of one portion would destroy the general system which had been provided by the legislature. It is true that in *Skagit County v. Stiles*, 10 Wash. 388 (39 Pac. 116), this court held that the different portions of the act allowing the county to condemn lands for a right of way for a ditch, found in the Session Laws of 1889-90, page 652, were so inter-dependent that those portions of the act which are not in conflict with the constitution had to fall with the portions that were so in conflict; but such does not seem to us to be the case in the law in question. It is earnestly insisted by the appellants that a great majority of the sections in the act under consideration referred especially to the manner of obtaining the right of way; but the test of the independence of the portion of the act which is conceded to be constitutional cannot depend upon the number of sections which refer to it compared with the number of sections which refer to the

portion which is found to be unconstitutional, and if but one section in an act comprising many indicates an independent theory for carrying out the provisions embodied in the section, it will be as forceful in sustaining the constitutional portion of the act as though a great majority of the sections in the act referred to it. In this act the legislature had the power to provide in manner and form as provided in the act, and independent of condemnation proceedings, for the improvement of existing highways; and if that portion of the act referring to condemnation proceedings were stricken from the law, it would, it seems to us, present a complete law with complete provisions for the improvement of existing highways, and this being the case, it is sufficient to maintain the constitutionality of the law so far as it prescribes a method for improving existing highways.

The constitutional question which was discussed upon the motion of the court at the second argument of this case will require some attention. Section 12 of article 11 of the constitution of the state of Washington provides that the legislature shall have no power to impose taxes upon counties, cities, towns, or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may by general laws vest in the corporate authorities thereof the power to assess and collect taxes for such purposes, and it is claimed that the law under consideration is obnoxious to this provision of the constitution for the reason that the assessment levied upon the cities and towns provided for in this act was levied by the county commissioners instead of by the corporate authorities of said cities. Section 1 of the act of March 15, 1893, Laws 1893, p. 301, provides that:

"The commissioners of any county may, at any regular or called session, cause to be established, located and constructed, improved, straightened, widened, altered or re-located any public road or highway as herein provided, when the same is conducive to the public convenience or welfare."

Section 3 of the same act provides that:

"No road improvement shall be located or commenced under this act unless the same has its beginning at the boundary limits of an incorporated city, or trade center located on a railroad or navigable body of water, or connect with a road or road system already improved under this act, or with a road which has been otherwise constructed of such a nature to permit of heavy freighting and rapid travel on the same at any time of the year."

Section 13 of the same act provides that the benefits assessed to the county for such improvement shall be one-third of the whole estimated cost thereof; that the benefits assessed to all property within each incorporated city within the county shall not be more than one-sixth of the whole estimated cost of the improvements, or of that portion thereof which is located within a limit of ten miles from the corporate limits of the city; that the benefits assessed to the lots and lands lying within the proposed improvement boundary shall not exceed one-third of the whole estimated cost of the proposed improvement; that the benefits assessed to each road district or township through or into which the improvement is located, shall not be assessed at more than one-third of the whole estimated cost of the improvement within the boundary of the road district or township. The county commissioners having acted upon this proposition, it must be conceded that so far as the county is concerned, it has no cause of complaint under this provision of the consti-

tution, but it is contended that the legislature had no right under the constitutional provision to either pass a law imposing a tax upon the cities within the improved district or to delegate authority to the county commissioners to pass a law imposing such a tax. It does not seem to us that the improvement provided for in this act is such an improvement as was contemplated by the framers of the constitution expressed in the article above referred to, as it would be if the legislature had passed a law-taxing the city for the purpose of building a town hall or of constructing sewers, or of constructing light or water works, or for improvements of that kind which are for the especial benefit of the city or town. This improvement is not for a city purpose or for a town purpose, but it is for a county purpose. It is still a county road, although it may traverse a city or town, and the county commissioners under the authority of this law simply have a right to apportion the expenses of these improvements to these different divisions and municipalities, which is in no sense imposing a tax for the benefit of the other municipalities through which the road passes, and, hence, cannot fall under the constitutional ban. But conceding that it was for the benefit of a city or a town, and that the corporate authority of such city or town had not exercised the power of assessing and collecting the expenses necessary for the construction of these improvements, we think the overwhelming weight of authority is that the assessment for benefits in such cases does not fall under the definition of the word "tax" as used in the constitution — that the word "tax" has reference to general revenues for the purpose of maintaining and carrying on the government where the benefits are alike enjoyed by all, and where no special benefits, as in the case of

the assessment for improvements, are enjoyed. Of course, the idea of compensation is the basis of all theories of taxation, but an element of special benefits enters into the one, and is the distinguishing feature between taxes and assessments for benefits.

· "Both forms," says Desty on Taxation (vol. 1, page 4), "are for public purposes, and both alike burdens on property; the only substantial difference between the two being that general taxation is based upon value, and subject to the constitutional rule of uniformity, while special taxation for benefits is not."

. The law makes a plain distinction between taxes which are burdens or charges imposed upon persons or property to raise money for public purposes, and assessments for city and village improvements which are not regarded as burdens, but as an equivalent or compensation for the enhanced value which the property of the person assessed has derived from the improvement. Mr. Cooley, in his work on taxation (2d ed.), p. 207, in discussing this question says, "The most striking illustration of the rule of strict construction of exemptions is seen in the case of special assessments for local inprovements, such as the paving and repair of streets, etc. It is almost universally held that a general exemption from taxation will not extend to such assessments," citing the leading case of the *Matter of Mayor, etc., of New York*, 11 Johns. 77, where the words of the exemption were that no church or place of public worship "should be taxed by any law of this state," where the court held that the word *taxes* meant burdens, charges or impositions put or set upon persons or property for public uses, but that the pay for an opening of the street in the ratio of the benefit or advantage derived from it was no burden or talliage or tax within the meaning of the exemption.

And the same author on page 606, in further distinguishing the use of the word *tax* says, "The general levy of taxes is understood to exact contributions in return for the general benefits of government, and it promises nothing ·to the persons taxed, beyond what may be anticipated from an administration of the laws for individual protection and the general public good.   Special assessments, on the other hand, are made upon the assumption that a portion of the community is to be specially and peculiarly benefited, in the enhancement of the value of property peculiarly situated as regards a contemplated expenditure of public funds; and, in addition to the general levy, they demand that special contributions, in consideration of the special benefit, shall be made by the persons receiving it," and so with the case at bar.   The county within whose borders this improvement is made, the citizens whose property abuts upon the highway, the city through whose streets the road passes and the improvement is made, are especially benefited; a benefit reaching beyond the benefit received by the citizens of the state at large; a benefit which can be traced directly and especially to these residents.

. " It is like a tax," as Mr. Cooley further on remarks, " in that it must be levied for a public purpose, and must be apportioned by some reasonable rule among those upon whose property it is levied.   It is unlike a tax in that the proceeds of the assessment must be expended in an improvement from which a benefit clearly exceptive and plainly perceived ·must inure to the property upon which it is imposed."

Several pages of authority are cited to sustain these distinctions.   Judge ELLIOTT, in his work on Roads and Streets, p. 370, after announcing the fact

that the question here involved was for a time the subject of much debate, but that it is now well established that such statutes do not impinge upon any constitutional provision, lays down the distinction in the following terse language:

"A distinction is made between local assessments and taxes levied for general revenue purposes. The question has been before the courts time and time again, and the almost unruffled current of judicial opinion is, that an assessment for a local improvement is not a tax within the meaning of the constitutional provisions requiring uniformity of taxation. Local assessments are not ordinary taxes levied for the purpose of sustaining the government, but they are charges laid upon individual property because the property upon which the burden is imposed receives a special benefit which is different from the general one which the owner enjoys in common with others as a citizen of the commonwealth."

In *Baltimore v. Green Mountain Cemetery*, 7 Md. 517, where it was held in a case where the charter of the cemetery company provided that a certain number of acres " shall be forever appropriated and set apart as a cemetery, which, so long as used as such, *shall not be liable to any tax or public imposition whatever*," that a *paving tax*, for paving a street in front of this property, was *not* embraced in this exemption; that the intent of the legislature was to exempt the property from all taxes or impositions imposed for the purpose of revenue, but not to relieve it from such charges as are inseparably incident to its location in regard to other property. That the word " tax " as used in the charter meant a burden, charge, or imposition put or set upon persons or property for public uses, but to pay for opening a street in the ratio to the benefit derived from it, is not a " tax " within the meaning

of the charter. The same thing was held in *Buffalo City Cemetery v. Buffalo*, 46 N. Y. 506, and *Olive Cemetery Co. v. Philadelphia*, 93 Pa. St. 129 (39 Am. Rep. 732) and it must be observed that these were extreme cases, not only so far as the language used in the exemption clause is concerned, but from the fact that the strongest sentimental considerations would suggest a protection to the home of the dead, which would assure its inviolate maintainance, and where the revolting thought of a cemetery being sold by virtue of an order of court to the highest bidder, would impel the court, if possible, to construe the law in favor of the exemption as liberally as possible; yet the courts, by reason of the almost universal holdings, were compelled to make no distinction even in these cases, but left, as they should, all such considerations to the legislature, where they properly belong. It will be observed also that in the case in 7 Md. 517, *supra*, the language of the charter was *" shall not be liable to any tax or public imposition whatever,"* the language there, as it will readily be seen, being much stronger and more comprehensive than the language employed in our constitution.

In *Paterson v. Society*, 24 N. J. Law, 385, under similar provisions of the charter, the court held that the taxes, charges and impositions specified in the charter are manifestly those for public use. The same question is passed upon by the supreme court of New Jersey in the case of the *State v. Mayor of the City of Newark*, 27 N. J. Law, 185, where it is emphatically announced that the exemption from taxation provided for in the charter did not cover an assessment made for benefits. In *Adams County v. City of Quincy*, 6 L. R. A. 155 (22 N. E. 624), it was held that an exemption from taxation of the property of the kind

used solely for public purposes does not extend to the special taxes for public improvements such as the paving of the street on which the premises front, citing many cases and text writers in support of the contention.

It seems to us that these cases settle the question in controversy, and that the construction placed upon this exemption clause in charters and statutes would not be affected by the fact that the exemption clause in this instance occurs in the constitution, but, if it could be possibly so considered, the authorities are as universal where the construction has been placed by the courts upon constitutions similar to ours. In Colorado the provision of the constitution (§ 7, art. 10), is as follows:

" The General Assembly shall not impose taxes for the purposes of any county, city, town, or other municipal corporation, but may by law vest in the corporate authorities thereof, respectively, the power to assess and collect taxes for all purposes of such corporation."

It will be seen that this provision, while the language is in some instances transposed, imposes upon the legislature the exact limitation that is imposed upon the legislature of this state by the provisions of our constitution. In *Denver v. Knowles*, 17 L. R. A. 135 (30 Pac. 1041), it was held that the word "tax" as used in the constitution, refers to ordinary public taxes, and not to assessments for local improvements in cities and towns, and further, that the power to make such local assessments is not an infringement upon the constitutional rule requiring all taxes to be uniform. This is a well considered case, and over-rules the former opinion rendered by that court in the earlier case of *Palmer v. Way*, 6 Colo. 106, followed

in *Wilson v. Chilcott*, 12 Colo. 600 ( 21 Pac. 901 ), the court alleging that when this question was decided in *Palmer v. Way, supra*, it was not necessary to the decision of the matter then before the court,— that the case of *Wilson v. Chilcott, supra*, was decided upon the principle of *stare decisis*, following the earlier case without the examination which should have been given to it, and that thus an opinion, upon a matter not necessary to the determination of the case under consideration at the time it was rendered, had become accepted as the law in the State of Colorado for ten years, upon the principle of *stare decisis*; yet the court, in obedience to the almost uniform current of authority, when this question was squarely presented to them felt constrained to over-rule the former cases and hold as we before indicated, viz., that the word "tax" when used in the constitution, referred to the ordinary public taxes, and not the assessments for benefits in the nature of local improvements, and the court cites many cases to sustain the decision. Under substantially similar provisions of the constitution of Missouri, it was held in *Farrar v. City of St. Louis*, 80 Mo. 379, that "the power to pave the streets of the city of St. Louis, and to charge the costs of such improvements against the adjoining property" under authority found in charter, was not "in conflict with the provisions of the constitution of the state." That the taxation mentioned in the constitution related to such taxation as was entitled to raise revenue to be paid into the respective treasuries of the state, county or municipality and to be disbursed therefrom for state, county or municipal purposes, and the court, to sustain its decision cites *Lockwood v. City of St. Louis*, 24 Mo. 20, *Newby v. Platte County*, 25 Mo. 269, and *Garrett v. City of St. Louis*, 25 Mo. 505 (69 Am. Dec.

475), where the court said that "the tax in question is not such a property tax as is within the meaning of that provision. The tax is local and for local purposes, and is a tax upon benefits and not directly upon property. . . . The cost of the public benefit is made a public burden, and the expense of the individual benefit is placed upon the shoulders of the person who receives it." Also citing *Egyptian Levee Co. v. Hardin,* 27 Mo. 495 (72 Am. Dec. 276), *Adams v. Lindell,* 72 Mo. 198, and many other cases. And so early as the case of *Adams v. Lindell,* reported in 72 Mo. 198, it was decided that:

"The provisions in the constitution of 1875, relating to the uniformity and equality of taxation, and the taking of private property for public use, were not intended to apply to, and do not effect any change in, the law as to the right of municipal corporations to make special assessments for local improvements."

In *Hammett v. Philadelphia,* 65 Pa. St. 146 (3 Am. Rep. 615), the distinction was clearly pointed out that under such constitutional provisions local assessments for benefits to particular property could be enforced. In fact, the authorities sustaining this view are overwhelming, and the decisions are expressed in §4 of Desty on Taxation in the following announcement:

"Taxes are distinguished from special assessments for local improvements; the former being burdens imposed upon all persons and property alike, and compensated for by equal protection to all; while the latter are not burdens, but equivalents, and are laid for local purposes upon local objects, and are compensated for in local benefits and improvements, enhancing the value of the property assessed to the extent of the assessment levied."

We do not think there is any merit in the contention of the appellant that this law imposes upon the judge

of the superior court duties that are non-judicial, because §§ 18 and 19 require that when an aggrieved party appeals the clerk of the county commissioners "shall transmit the record to the superior judge of the county, and the superior judge shall file the transcript and docket the case," and then proceed within five days to determine the same, the contention being that these provisions impose upon the court duties which the constitution prohibits (art. 4, § 15), viz., a public employment non-judicial. Even if it should be conceded that the appellants were in a position to raise this question, and further conceded that it would be in violation of the constitution for the judge to act in this capacity, literally construing the terms of the law, we think that a reasonable construction will be that it is the duty of the judge to *direct* the filing of papers and the docketing of the case.

It is contended by the appellant that, in any event, this particular case will have to be reversed for the reason that it is alleged in the complaint and therefore admitted by the demurrer that one of the incorporated cities (Lynden) liable to assessment, or at least its pro rata of one-sixth of the tax levy, was not assessed at all, so that the apportionment of the expense has not been made either conformably to the law or in proportion to the benefits accruing. While this may be true, the appellants in this case have not shown by their complaint that they were in any way injured by the escape of the City of Lynden from its assessment, for they only allege themselves to be abutting property owners, nor have they alleged that they are within any of the cities or towns mentioned in the complaint, viz., Fairhaven, New Whatcom, of the 3d class, Blaine, Sumas and Lynden, of the 4th class, and as it appears that the expenses were assessed

as follows: One-third of the said sum against the whole of the taxable property of the county; one-sixth against the taxable property located in the cities of Fairhaven, New Whatcom; one-sixth against all of the taxable property of the road districts through which the several ways might pass, and one-third against the lands lying on either side of the several ways, it follows that the omission to levy this expense against the City of Lynden would only affect the other cities and would not, in any event, affect the rights of these appellants, whose property does not appear to be within the limits of said cities.

We do not think there is a sufficient showing by the complaint that there was any practical unfairness or non-compliance with the constitution or the laws so far as uniformity of the assessment is concerned. It is a practical impossiblity to assess property, either so far as local assessments are concerned, or as general assessments are concerned, with absolute uniformity, and the most practical approach to uniformity and justice in the assessment must be accepted by the courts as complying with the provisions of the law, or assessments, from the very nature of things, would always miscarry.

Believing that no substantial error was committed by the court in sustaining the demurrer, the judgment of the lower court will be affirmed.

GORDON and SCOTT, JJ., concur.

HOYT, C. J., dissents.