[No. 8551.    Department One.    March 26, 1910.]

EDWARD VAN DE VANTER, *Respondent*, v. J. REDELSHEIMER *et al., Appellants.*[1]

BAILMENT—USE—COMPENSATION—EVIDENCE—SUFFICIENCY. In an action to recover for the use of a young mare for about four years, the evidence is insufficient to support a verdict for $1,046.50 where the value of the animal or of her use was not shown, and the parties were brothers, neither engaged in a business indicating that other than ordinary use was contemplated; and $400 appears to be all that she could have earned.

PAYMENT—MEDIUM—CONTRACTS—BREACH. Under a promise "to do what is right," for the use of a mare, the medium of payment is money where no other is expressed, and a money compensation will be awarded for breach of the contract.

Appeal from a judgment of the superior court for King county, Tallman, J., entered June 10, 1909, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action on contract. Reversed.

*McClure & McClure* and *Hughes, McMicken, Dovell & Ramsey*, for appellants.

*Frank S. Griffith*, for respondent.

GOSE, J.—This is a suit to recover the reasonable rental value of a mare for four years, one month and four days, or an aggregate of fourteen hundred and ninety-five days.

[1]Reported in 107 Pac. 847.

There was a judgment for the plaintiff for $1,046.50.   The defendants have appealed.

The case was tried to the court, and the recovery was had on the basis of seventy cents per day without abatement for Sundays or inclement weather.   The trial of the case developed that the respondent delivered the mare to his brother, A. T. Van de Vanter, in his lifetime, on the promise of the latter "that he would do what was right."   The promise was communicated to the respondent by a third party who was acting for A. T. Van de Vanter.   The mare was delivered on May 20, 1904, kept by the deceased until his death in September, 1907, and thereafter retained by his estate until June 24, 1908.   She was three years old at the time of the delivery, and only partially broken, according to the testimony of the respondent, and wholly unbroken if we accept the testimony of the executrix.

There is no evidence as to the value of the mare, other than the assumption of counsel upon the one side that she is worth $150 or $200, and the assumption of opposing counsel that she is worth $500.   The respondent, however, states that she is a "registered standard-bred, thoroughbred mare," a breeding wholly unknown to the writer.   The testimony as to the value of the use of a horse broken, fed, and cared for by the user where the use is continued for so long a period of time throws little light on the case.   One of the respondent's witnesses, a liveryman, said that he rented horses for five months at the rate of sixty to seventy-five cents per day, but that the value depends a great deal upon the conditions and circumstances of the case; that sixty or seventy cents a day would not be reasonable unless "the horse earned it; worked right along," and that he did not know of a case like this.   Another of the respondent's witnesses said that he would not take a horse at all under the conditions present in this case.   A witness for the appellants stated that he would want something for his services for breaking and caring for a horse under similar conditions.   No claim is made that the

mare was used for other than ordinary purposes, and the record leaves the character and extent of the use of the mare largely to conjecture.

It may be gathered, however, from all the testimony, that the circumstances are so unusual, so aside from the ordinary experience and observation, that any estimate of compensation must be based largely upon conjecture or mere arbitrary assumption. It would, however, be doing violence to reason and common sense to suppose that the respondent expected to receive, or that the deceased expected to pay, any such sum as the learned trial court allowed. If the deceased or his estate had converted the mare, or if she had been killed or lost through their negligence, the maximum recovery would be the value of the mare at the time and place of conversion or loss, with legal interest. The relation of the parties was such as to make it certain that the respondent did not intend to charge, and the brother did not intend to pay, livery rates. Neither party was engaged in the livery business. It would be absurd to presume that the deceased would have received, broken, and retained the mare had he supposed that livery rates would be exacted. However, the estate is liable for the reasonable value of the use of the mare for ordinary purposes. With such aid as we can gather from the testimony, our conclusion is that $400 is ample and adequate compensation. However distinguished the lineage of the animal may be, we do not think for ordinary use she could reasonably have earned a larger sum during the period involved in the suit.

The appellants urge that the promise of A. T. Van de Vanter "that he would do what was right" did not import an agreement to pay in money. We think the rule is that payment must be made in money unless a different medium of value or exchange is expressed. However, if the agreement be construed as an engagement to pay in something other than money, the law will award a money compensation for a breach of the agreement. There is no claim made of a will-

ingness on the part of the appellants to render any compensation.

The judgment will be reversed, with directions to enter a new judgment for $400. The appellants will recover costs.

RUDKIN, C. J., FULLERTON, and CHADWICK, JJ., concur.