[No. 10900.    *En Banc.*    July 10, 1913.]

JAHN CONTRACTING COMPANY, *Respondent*, v. THE CITY OF SEATTLE *et al.*, *Appellants.*[1]

MUNICIPAL CORPORATIONS—CHARTERS—MINIMUM WAGE ON LOCAL IMPROVEMENTS—PUBLIC UTILITIES. A "local improvement" within the meaning of a charter amendment fixing a minimum wage to be paid by contractors performing any local improvement work for the city, has reference to a public improvement which, by reason of its being confined to a locality, enhances the value of adjacent property as distinguished from general benefits from public utilities; and hence has no application to the construction of a municipal railway system built upon the credit of the whole city.

Appeal from a judgment of the superior court for King county, Main, J., entered August 26, 1912, upon findings in

[1]Reported in 133 Pac. 458.

favor of the plaintiff, after a trial on the merits before the court without a jury, in an action for an injunction. Affirmed.

*James E. Bradford, Melvin S. Good,* and *Ralph S. Pierce,* for appellants.

*West & Wright,* for respondent.

MOUNT, J.—This action was brought by the plaintiff to enjoin the city of Seattle and its board of public works from forfeiting and canceling a contract for the construction of a railway within the city limits. On the trial of the case, judgment was entered in favor of the plaintiff. The defendants have appealed from that judgment.

The facts are not in dispute and are briefly as follows: On January 9, 1911, the city council regularly passed an ordinance by which it was proposed to construct a street railway system within the city of Seattle and to pay for the same by the issuance of bonds of the city, which bonds were to be a general indebtedness of the city. On or about March 7, 1911, at an election duly called for that purpose, the electors voted favorably to the issuance of these bonds and approved the said ordinance. In pursuance thereof the city council thereafter passed an ordinance which authorized the board of public works to call for bids for the construction of a section of the street railway system to be known as "division A." On or about December 13, 1911, the board of public works called for bids for the construction of said "division A," by publishing notice as required by the city charter, which notice stated that bids would be opened on January 12, 1912. The plaintiff thereupon bid for the construction of "division A" of said street railway and filed its bid with the board of public works, together with a certified check for $7,-700, as required by §§ 14 and 15 of article 8 of the charter of the city. Said § 15 reads as follows:

"At the time and place named such bids shall be publicly opened and read; no bid shall be rejected for informality, but

shall be received if it can be understood what is meant thereby. The board shall proceed to determine the lowest bidder, and may let such contract to such bidder, or, if in their opinion all bids are too high, they may reject all of them and readvertise, and in such case all checks shall be returned to the bidders; but if such contract be let, then and in such case all checks shall be returned to the bidders except that of the successful bidder, which shall be retained until a contract be entered into for making such improvement between the bidder and the city in accordance with such bid. If the said bidder fails to enter into such contract in accordance with his bid within ten days from the date at which he is notified that he is the successful bidder, the said check and the amount thereof shall be forfeited to the city, and the secretary shall deliver said check to the city comptroller, who shall draw said amount and pay the same into the city treasury, to the credit of the 'local improvement fund,' and the board shall readvertise for proposals for such work. Neither the board nor the city council shall have power to remit such forfeiture."

On January 12, 1912, all bids made for the construction of the work on said "division A" were opened. Plaintiff's bid was the lowest of all bids submitted, it being $148,927.20. Thereupon the certified checks of all other bidders were returned and the certified check of the plaintiff was retained. Thereafter the plaintiff was at all times ready and willing to execute a formal written agreement with the city of Seattle to construct the work in accordance with said bid. Thereafter, on March 5, 1912, the electors of the city of Seattle, at a regular election, adopted an amendment to the charter, which provides as follows:

"Minimum wage to be paid on local improvement work: Every contractor and subcontractor performing any local improvement work for the city of Seattle shall pay or cause to be paid to his employees on such work not less than the current rate of wages paid by the city of Seattle for work of like character and in any event not less than two and seventy-five hundredths ($2.75) dollars per day. Said contractor and subcontractor shall, on such work, give preference to resi-

dent laborers.   This article shall be enforced by the city council by ordinance." Seattle charter, art. 23, § 2.

This amendment became effective about March 8, 1912.

On June 28, 1912, the contract for the construction of said "division A" was formally awarded to the plaintiff by the board of public works, and on July 8, 1912, a formal written contract was executed by the plaintiff and the board of public works for the construction of the work.  The plaintiff gave a bond to secure the faithful performance of the contract.   Thereafter, under and by virtue of the contract, the plaintiff commenced the construction of the railway system in accordance with the terms and conditions of the contract, prosecuting the work up to the time this action was brought.  In doing so the plaintiff was required to engage a large number of laborers.  Plaintiff did engage men to work upon the construction of the railway under an agreement to pay the laborers two dollars per day of eight hours.  The going and prevailing wage in the city of Seattle for this class of work ranged from $2 to $2.25 for eight hours.  The laborers were willing to accept $2 per day for said work. While the work was in progress, the board of public works served notice upon the plaintiff to the effect that plaintiff was paying the employees engaged upon said work a sum as wages substantially less than $2.75 per day, as provided in the amendment to the city charter, and directed the plaintiff to appear before the board of public works on the 9th day of August, 1912, and show cause why the contract should not be forfeited and canceled for that reason.  Thereupon this action was brought to restrain the city and the board of public works from carrying this threat into effect.

Two questions are presented upon this appeal: First, Is the amendment to the city charter above quoted valid?  Second, Is the contract in question controlled by that amendment?   More than 150 pages of appellant's opening and reply briefs are devoted to a discussion of the first question. For the purposes of this case it may be conceded that the

amendment is valid, and we shall not further notice that question.

It will be noted that the amendment under consideration applies only to *"local improvement work."* At the time this amendment was passed, and ever since that time, the term "local improvement work" has had a clearly defined and well understood meaning. Chapter 98 of the Laws of 1911 is a chapter relating to local improvements in cities and towns. This chapter, at page 442, § 6, authorizes cities and towns to make certain local improvements which are enumerated therein, and to assess the cost thereof upon the property specially benefited. The general definition of "local improvement" is:

"A local improvement, within the meaning of the statute, is a public improvement which by reason of its being confined to a locality, enhances the value of adjacent property, as distinguished from benefits diffused by it throughout the municipality." *Chicago v. Blair,* 149 Ill. 310, 36 N. E. 829, 24 L. R. A. 412.

See, also, Black's Law Dictionary (2d ed.), p. 598, and cases there cited. And the cost of such improvement may be assessed to the property specially benefited. *Seanor v. Board of County Com'rs,* 13 Wash. 48, 42 Pac. 552; *Smith v. Seattle,* 25 Wash. 300, 65. Pac. 612.

It it plain, we think, that the work here undertaken was not local improvement work. This railway system was being built upon the credit of the whole city. The city was authorized to build it under the provisions of Rem. & Bal. Code, 8005 (P. C. 77 § 1073), as a "public utility" which is required to be ratified by the qualified voters of a city at a general or special election. Rem. & Bal. Code, § 8006 (P. C. 77 § 1075). It seems plain, therefore, that this railway was a public utility and was being built as such and cannot be said to be local improvement work. The contract is therefore not controlled by the charter amendment quoted, and the lower court properly

restrained the city from interfering with the work under the contract.

The judgment is therefore affirmed.

CROW, C. J., CHADWICK, ELLIS, MORRIS, PARKER, FULLERTON, and GOSE, JJ., concur.

MAIN, J., took no part.