[No. 13036.    Department Two.    April 11, 1916.]

The State of Washington, *on the Relation of A. George Wehe et al.,* Respondents, v. Pasco Reclamation Company *et al.,* Appellants.[1]

WATERS AND WATER COURSES—WATERWORKS — CITY CONTRACT FOR SERVICE—CONSTRUCTION—REMEDIES OF COMPANY. In view of Rem. & Bal. Code, § 7687, requiring all demands against a city to be presented and audited and paid by warrants upon the treasurer, an agreement by a city to pay a water company an annual charge of $900, to be paid by means of rentals duly charged and collected against the property, contemplates payment of warrants from a fund agreed to be collected by the city, making them the equivalent of cash; and failure to make the collections would be a breach of the city's contract.

SAME. Where a contract for water service required payment by the city of an annual charge, to be paid by means of rentals duly charged and collected against the property, and provided that, in case of default in payment or nonperformance by the city, the company might, at its option, shut off the water and discontinue service, the company's right to shut off the water is not affected by the fact that it has a remedy at law against the city by enforcement of the lien of the assessment against the property.

SAME. Neither is the right to shut off water affected by the fact that property owners paying the assessments would be injured thereby, as they may compel the city to proceed against defaulting owners.

Appeal from a judgment of the superior court for Franklin county, Mills, J., entered June 23, 1915, in favor of the relator in mandamus proceedings to compel the furnishing of water, after a trial to the court.    Reversed.

*Richards & Fontaine* and *Driscoll & Leonard,* for appellants.

*Edward A. Davis,* for respondents.

Holcomb, J.—On June 3, 1913, the city of Pasco passed an ordinance authorizing the city to purchase a water supply

[1]Reported in 156 Pac. 834.

for local improvement district No. 44, which had theretofore been created in the city. By the terms of the ordinance, the city was empowered to purchase the water supply for the sum of $15,000, together with an additional maintenance charge of $900 for the first five years, and thereafter an annual charge of $750, which was payable on or before April 1 of each year, commencing with 1914. Pursuant to the terms of this ordinance, the city entered into a contract with the appellant Pasco Reclamation Company. The terms and conditions of this contract material in disposing of this case are as follows:

"Par. 2. The water right hereby conveyed shall be subject to an annual maintenance charge of nine hundred dollars ($900.00) during the years 1914 to 1918, both years inclusive, and thereafter to an annual maintenance charge of seven hundred and fifty dollars ($750.00)."

"Par. 5. The city shall cause the annual charges mentioned in paragraph 2 hereof to be paid to the company at the time and in the manner therein agreed by means of rentals duly charged and collected as provided by law against the property within said improvement district."

"Par. 11. If the annual maintenance charge provided for in paragraph 2 hereof be not paid within the time and in the manner therein specified, or if the city shall fail to perform any other covenant or agreement herein contained by it to be performed, then the company may, at its option, shut off the water from said improvement district and thereafter decline to turn on or deliver said water to said improvement district until such charges are fully paid and until such covenants and agreements are fully performed   .   .   ."

The ordinance providing for the collection of the maintenance fees is not in any way brought before us.

In April, 1915, which was the second year of the life of the contract, warrants to the amount of $900 were issued by the city to appellant company for the maintenance charge. Appellant company presented these warrants for payment, but payment was refused on account of lack of funds. The evidence tends to show that the levy in 1914 was $929.74; that

warrants to the amount of $964.89 were issued that year, and that $629.36 was collected on this levy.   In 1915, the levy was $939.91; $900 worth of warrants were issued, and $605.46 of the levy of this year collected, leaving a balance in the hands of the treasurer greatly insufficient to cash the warrants for $900, tendered to appellant in payment of the maintenance fee.   Appellant then returned the warrants to the city and refused to deliver the water as provided for in the contract.   Relators, who were property owners, thereupon made an application for a writ of mandamus to compel appellants to furnish them with the water supply.   Upon the hearing of this application, the trial court issued the writ as prayed for, this appeal resulting.   Several errors are assigned by appellants; but, as we are of the opinion that this case should be reversed on the merits, they will not all be considered.

The determinative features of this case are solely of law, viz., Was the tender of warrants to appellant, without sufficient funds collected for their payment, a sufficient compliance by the city with that part of the contract which provides that $900 maintenance fee shall be paid to appellant annually; and did the city agree, by virtue of paragraph 5 of the contract, to collect the money so that sufficient money would be on hand to pay the maintenance fee?

While it is true that the terms of the contract provide for dollars in payment of the maintenance fee, which in its ordinary interpretation means cash, it seems evident that the parties contemplated that this fee should be paid in warrants, especially in view of that provision of the contract which provides that this annual maintenance charge should be paid by means of rentals duly charged and collected as provided by law against the property in the improvement district. There is no authority under the statutes which will allow the city to disburse this money to appellant in cash.

Rem. & Bal. Code, § 7687 (P. C. 77 § 331), provides as follows:

"All demands against such city shall be presented to and audited by the city council, in accordance with such regulations as they may by ordinance prescribe; and upon the allowance of any such demand, the mayor shall draw a warrant upon the treasurer for the same, which warrant shall be countersigned by the clerk, and shall specify for what purpose the same is drawn, and out of what fund it is to be paid."

It is reasonable to presume that the parties contracted with reference to the law as it then existed, and when considered in connection with paragraph 5 of the contract, we think it is conclusive that the parties contemplated warrants as the mode of payment, since warrants, in so far as the need of appellant is concerned, are the equivalent of cash if there are sufficient funds collected or forthcoming and available, within a reasonably definite time, for their payment. Also the fact that appellant accepted the warrants for the 1914 maintenance fee and, so far as the record discloses, made no objection at that time, since they were cashed, and the further fact that no objection was made to the warrants in 1915 till they were registered unpaid for lack of funds, lends force to this contention.

We do not think that this rule of construction could be extended to such an extent as to hold that $900 means warrants of that amount without sufficient money on hand or forthcoming with reasonable certainty to cash them, and from the fact that some of the 1914 assessment was uncollected at the time of trial it would seem that the city was rather dilatory and negligent in attending to this duty. The unpaid maintenance fees may never be collected or even attempted to be collected by the city.

A warrant of a municipal corporation is a general order payable when the funds are found. *Shelley v. St. Charles County Court*, 21 Fed. 699. It is in effect, in this state, an assignment *seriatim* of that amount of the funds against which it is drawn. A warrant even lacks the stable quality of a definite time of payment peculiar to a bond or note, and

20—90 WASH.

will only be paid when there is sufficient money in that particular fund on which it is drawn to cash it, and judging from the manner in which the city has collected the assessments already levied, this time would be very vague and indefinite.

Under the construction we place upon the contract, the city agreed to pay appellant, on April 1, of each year, $900 in warrants, and also agreed to collect this amount by means of assessments, and to do this in such a manner that the warrants would be equivalent to cash, as they would have been if there were sufficient money on hand or forthcoming to cash them at the time they were tendered to appellant. It is undisputed that there was not sufficient money in that particular fund upon which these warrants were drawn to cash them, and the city therefore breached its contract. It does not seem probable that the parties to the contract contemplated that the appellant should be paid in warrants that would only be the equivalent of money at any future time, dependent on the contingency of the city collecting the delinquent taxes, especially where, by the express terms of the contract, money was made the medium of payment.

In *In re Smith's 'Petition*, 9 Wash. 85, 37 Pac. 311, 494, this court held in eminent domain proceedings that just compensation would be made within the meaning of the constitution by the issuance of a warrant in the ordinary way, if there were funds in the treasury out of which it could be paid on presentation. In *Van de Vanter v. Redelsheimer*, 58 Wash. 38, 107 Pac. 847, this court held that payment must be made in money unless a different medium of value or exchange is expressed. This contract provided that money was the medium of payment, and we have construed this to mean money or its equivalent, which would be warrants that were capable of being converted into cash on the day of payment—as favorable a construction under the terms of this contract as relators could contend for.

Relators urge that, if the taxes for the maintenance fee were not properly collected, appellant had its remedy at law against the city, as the assessment was a valid lien against the property. Granting that this is true, by the express terms of the contract, an additional remedy was provided upon the breach of any covenant on the part of the city, viz., the turning off of the water, which remedy appellant resorted to in this case. The express terms of a contract cannot be avoided simply because another remedy at law is available.

If a few of the beneficiaries of the contract can enforce the furnishing to them upon their compliance, others failing to comply, the result would be that the nonperforming property owner would derive as much benefit from nonperformance as from complete performance.

The contract for the use of the water was a semi-public one, made for the benefit of all the real property owners in a certain defined and established local improvement district. It certainly appears that a manifest hardship and injustice will be worked upon the property owners residing within the improvement district who punctually pay their annual assessments, by the default of those who fail to pay. In such case, however, it is the duty of the city, as the agent and manager of the improvement district, to collect the funds from defaulting owners in the manner provided by law. If the city fails in its duty, it would seem that the remedy of the injured property owners would be, in the first instance at least, to proceed against the city to compel it to perform its duty in the premises. The service company, having a like interest, might also proceed against the city to compel it to proceed to enforce payment of the assessments, but it has a choice of remedies, the latter or the remedy of ceasing to supply the water.

We are of the opinion that the judgment must be reversed and the action dismissed, and it is so ordered.

MORRIS, C. J., MAIN, and PARKER, JJ., concur.